

IN THE
TENTH COURT OF APPEALS

———————————

No. 10-12-00285-CR

RONALD WAYNE JACKSON JR.,

Appellant

v.

THE STATE OF TEXAS,

Appellee

———————————

From the 54th District Court
McLennan County, Texas
Trial Court No. 2011-1626-C2

MEMORANDUM  OPINION

In this appeal, appellant, Ronald Wayne Jackson Jr., challenges his convictions

for injury to a child with a deadly weapon for which he received a fifty-year sentence

and injury to a child by omission for which he received a sixty-year sentence. *See* TEX.

PENAL CODE ANN. § 22.04(a)-(b) (West Supp. 2012). In three issues, appellant argues

that: (1) the evidence is insufficient to support the jury's findings that he used or

exhibited a deadly weapon and caused "serious bodily injury"; and (2) his conviction

for injury to a child by omission should be vacated because the convictions violate the

Double Jeopardy Clause of the United States Constitution. *See* U.S. CONST. amend. V. We affirm, in part, and reverse and render, in part.

## I.    BACKGROUND

On May 10, 2011, Cameron Garrett, a second-grade teacher at La Vega Elementary School, noticed that one of her students was moving slow to class and acting unusually. The child, appellant's nine-year-old son, told Garrett that he did not feel well. Garrett recalled that the child had been absent from school the previous two school days. After further observation, Garrett emailed the school's counselor, Gordon Heath, about the student's condition and eventually sent the child to Heath.

Heath noticed that the child was limping around, and he later noticed an injury to the child's foot. Upon questioning, the child revealed to Heath that appellant had hit him with a club a few days prior. Heath also noticed that the child's hand was swollen. Heath determined that the school's registered nurse, Patricia Lednicky, needed to examine the child for further injuries.

Lednicky testified that, when presented, the child was "very matter of fact. Just, I mean, no emotion, just not crying, not upset. Just, you know, very cooperative. He was willing to show us." Lednicky recounted that:

> He showed us his hand first and it was bruised. The right hand was bruised on the palm and the top of the hand was swollen. He didn't have very much motion. I asked him to try to do this, and he just could do it a little bit just moving his hand. Then he showed me his toe, right toe, and it was red and swollen and it looked kind of wet like it was draining. The skin was a little bit torn off on the toe. And then he showed us the buttocks area, and the buttocks area had several scabs on both buttocks areas. And on the right buttocks, there was also two areas that were, like, raw, fresh wounds, like—like scrapes.

> . . . .

> No. No. But the skin was, you know, gone. It was like, raw.

> . . . .

> Like—and it wasn't bleeding, but it was draining. Which on his underwear and his—he was wearing some light-colored pants, there was a stain there like it had been draining.

> . . . .

> Well, then he showed us his arm, left arm, and it was bruised also. And I asked him what, you know, what happened. And he said that—he told me that on his toe and hand—on his foot and hand that his dad had hit him with a golf club.

With regard to his buttocks, the child told Lednicky that appellant had hit him with a "two-by-four" board and a golf club. It was later alleged that appellant had also struck the child with a water hose.

In addition to Lednicky's testimony, Sarah Hopkins McCormick, an employee of the Texas Department of Family and Protective Services, also described the child's injuries as follows:

> No. [The child] had fractures in his hand. He had multiple bruises all over his body in various stages of healing. Some of them were raised. Some of them were flat. [The child] is a dark child, so bruising on darker children are [sic] sometimes—it's a little bit harder to see. But they were so apparent on him. He had cuts and lacerations on his feet. The entire back side or—I say the entire. But a four-inch by two-inch section was completely taken off of his behind. That is not something that he could, number one, inflict on himself or another child would be able to inflict on him.

The child was subsequently taken to the hospital for treatment, and police and Child Protective Services began investigating the incident.

Michael Gates, an investigator with the McLennan County Sheriff's Office, interviewed appellant about the incident. Gates recounted that appellant wanted "to know what was going on" when the interview started. But, as the interview progressed, appellant became "very defensive, loud, and . . . aggressive." Gates did not believe that appellant was genuinely concerned about the child's well-being. Appellant told Gates that the child's injuries were caused by a fight that the child had with neighborhood kids. Appellant admitted that he did not call the police or seek medical attention for the child after the alleged fight transpired. Appellant denied ever spanking the child.[1] Instead, appellant stated that he disciplined the child by making him do sit-ups and push-ups, which would help prepare the child for football.

Clorice Fahie, appellant's girlfriend, and Maurice Preston, appellant's friend who lived in the house and who the children referred to as uncle, both testified that appellant spanked the child on the day of the incident. Fahie, admitting that she was not as forthcoming with information initially, testified that appellant began hitting the child because the child had not washed dishes correctly and had gotten in trouble at school. Fahie recalled that appellant hit the child with a belt and a board. Preston noted that appellant had told him the following:

---

[1] Evidence was presented of several other instances where the child in this case alleged that appellant abused him. Heath noted that, in a prior incident, he noticed that the child had puncture wounds around his waist. Heath testified that it looked like the skin had been pierced in three or four places and that he believed the wounds were caused by appellant spanking the child with a belt with the belt buckle causing the wounds. Appellant testified that he had never spanked the child, but he acknowledged that the child alleged in 2010 that appellant had hit the child with a stick. Appellant also noted that the child alleged that appellant had made him drink fish water on another occasion. Apparently, with respect to each of these allegations, Child Protective Services closed the case due to lack of evidence.

It was like, he [appellant] whopped [the child]. I was, like, what you whopped [the child]. He was, like, I whopped [the child] pretty bad. I was, like, what you mean you whipped [the child] pretty bad. That's when he told me, well, he whopped him with a two-by-four. At first he started with a water hose. From there, he was hitting himself so much with the water hose, he got tired of hitting himself with the water hose that he grabbed a two-by-four. He said the two-by-four eventually gave out and broke, so he went and grabbed a golf—and I think he went and grabbed a golf club and he hit [the child] with a golf club.

During the course of their investigation, law enforcement discovered that the evidence and statements corroborated the child's version of the events rather than appellant's.

Appellant was charged by indictment with one count of injury to a child with a deadly weapon and one count of injury to a child by omission. *See id.* § 22.04(a)-(b). The indictment also contained a deadly-weapon paragraph, which alleged that appellant "used or exhibited a deadly weapon, to wit: belt or board or hose or golf club, during the commission of or immediate flight from said offense . . . ." At the conclusion of the evidence, the jury found appellant guilty of the charged offenses in both counts. Moreover, a deadly weapon finding was made. The jury assessed punishment at fifty years' incarceration in the Institutional Division of the Texas Department of Criminal Justice for the one count of injury to a child with a deadly weapon (Count 1) and sixty years' incarceration for the one count of injury to a child by omission (Count 2). The imposed sentences were ordered to run concurrently. The trial court certified appellant's right to appeal, and this appeal followed.

## II. EVIDENTIARY SUFFICIENCY

In his first two issues, appellant asserts that the evidence adduced at trial is insufficient to establish that: (1) he used or exhibited a deadly weapon during the

commission of the charged offense of injury to a child; and (2) the alleged conduct caused "serious bodily injury" to the child victim. We disagree.

## A. Applicable Law

The Texas Court of Criminal Appeals, in *Brooks v. State*, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010), abandoned the factual-sufficiency standard in criminal cases; thus, we need only consider the sufficiency of the evidence under the legal-sufficiency standard articulated in *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789, 61 L. Ed. 2d 560 (1979).

In *Lucio v. State*, 351 S.W.3d 878, 894 (Tex. Crim. App. 2011), *cert. denied*, 132 S. Ct. 2712, 183 L. Ed. 2d 71 (2012), the Texas Court of Criminal Appeals expressed our standard of review of a sufficiency issue as follows:

> In determining whether the evidence is legally sufficient to support a conviction, a reviewing court must consider all of the evidence in the light most favorable to the verdict and determine whether, based on that evidence and reasonable inferences therefrom, a rational fact finder could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 318-19, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979); *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007). This "familiar standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Jackson*, 443 U.S. at 319. "Each fact need not point directly and independently to the guilt of the appellant, as long as the cumulative force of all the incriminating circumstances is sufficient to support the conviction." *Hooper*, 214 S.W.3d at 13.

*Id.*

Our review of "all of the evidence" includes evidence that was properly and improperly admitted. *Conner v. State*, 67 S.W.3d 192, 197 (Tex. Crim. App. 2001). And if

the record supports conflicting inferences, we must presume that the factfinder resolved the conflicts in favor of the prosecution and therefore defer to that determination. *Jackson*, 443 U.S. at 326; 99 S. Ct. at 2793. Furthermore, direct and circumstantial evidence are treated equally: "Circumstantial evidence is as probative as direct evidence in establishing the guilt of an actor, and circumstantial evidence alone can be sufficient to establish guilt." *Hooper*, 214 S.W.3d at 13. Finally, it is well established that the factfinder is entitled to judge the credibility of the witnesses and can choose to believe all, some, or none of the testimony presented by the parties. *Chambers v. State*, 805 S.W.2d 459, 461 (Tex. Crim. App. 1991).

The sufficiency of the evidence is measured by reference to the elements of the offense as defined by a hypothetically correct jury charge for the case. *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997). Here, appellant was charged with a first-degree felony in Count 1. *See* TEX. PENAL CODE ANN. § 22.04(a), (e). Thus, with regard to Count 1, under a hypothetically correct jury charge, the State was required to prove beyond a reasonable doubt that appellant intentionally or knowingly caused serious bodily injury to a child—a person fourteen years of age or younger. *See id.* § 22.04(a), (c)(1).

A person acts intentionally with respect to the result of his conduct when it is his conscious objective or desire to cause the result. *Id.* § 6.03(a) (West 2011). A person acts knowingly with respect to a result of his conduct when he is aware that his conduct is reasonably likely to cause the result. *Id.* § 6.03(b). Intent can be inferred from the extent of the injuries to the victim, the method used to produce the injuries, and the relative size and strength of the parties. *Patrick v. State*, 906 S.W.2d 481, 487 (Tex. Crim. App.

1995).  It can also be inferred from circumstantial evidence, such as acts, words, and appellant's conduct.  *Guevara v. State*, 152 S.W.3d 45, 50 (Tex. Crim. App. 2004). Furthermore, "serious bodily injury" is a "bodily injury that creates a substantial risk of death or that causes death, serious permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ."  TEX. PENAL CODE ANN. § 1.07(a)(46) (West 2011).

## B.      Serious Bodily Injury

Here, the child's teacher and the school's counselor testified that they saw the child limping at school.  According to Heath, the child stated that his father hit him in the foot with a club, which, among other things, tore off some of the skin from the child's toes and impaired the use of his foot.  Heath also noticed that the child's right wrist was swollen.  The child told Heath that he was unable to move his fingers on his dominant hand at least three days after the incident and for some time thereafter. Ultimately, it was determined that the child's hand was fractured.  In addition, witnesses testified that a "four-inch by two-inch" section of skin was missing on the child's buttocks as a result of the incident.  This injury was so severe that the child bled through the underwear and jeans that he had worn to school.  Patricia Lednicky, the school's nurse, noted that she had never seen such severe injuries on a student.  When presented to Lednicky, the injury to the child's buttocks was untreated and not bandaged.  Lednicky opined that this injury, if left untreated, could become infected and result in blood poisoning.  In addition, witnesses testified that the child was lethargic and dazed at school on the first day back after the incident and that the child

had trouble ingesting food because the pain was so severe that it caused him to vomit. Furthermore, several witnesses opined that the injuries sustained by the child in this case were severe enough as to constitute "serious bodily injury."[2]

In determining whether the evidence is sufficient to establish "serious bodily injury," the relevant issue is the disfiguring or impairing effect of the bodily injury as it was inflicted, not after the effects have been ameliorated or exacerbated by other actions such as medical treatment. *Brown v. State*, 605 S.W.2d 572, 575 (Tex. Crim. App. [Panel Op.] 1980) (citing *Boney v. State*, 572 S.W.2d 529 (Tex. Crim. App. 1978) (concluding that evidence showing a wound, if unattended, could cause substantial risk of death was sufficient even though the wound was later repaired)); *see Stuhler v. State*, 218 S.W.3d 706, 714 (Tex. Crim. App. 2007); *Fancher v. State*, 659 S.W.2d 836, 838 (Tex. Crim. App. 1983) (en banc). Instead, we must determine whether an injury constitutes a serious bodily injury on a case-by-case basis, evaluating each case on its own facts to determine whether the evidence was sufficient to permit the factfinder to conclude that the injury fell within the definition of "serious bodily injury." *See Moore v. State*, 739 S.W.2d 347, 352 (Tex. Crim. App. 1987) (en banc); *Eustis v. State*, 191 S.W.3d 879, 884 (Tex. App.—Houston [14th Dist.] 2006, pet. ref'd).

"Serious bodily injury" may be established without a physician's testimony when the injury and its effects are obvious. *See Carter v. State*, 678 S.W.2d 155, 157 (Tex. App.—Beaumont 1984, no pet.); *see also Sizemore v. State*, No. 07-11-00424-CR, 2012 Tex.

---

[2] In fact, Robert Fuller, supervisor of detectives at the McLennan County Sheriff's Office, noted that he had never seen such severe injuries on a child before. He also testified that having a broken hand on his dominant hand would lead to a "protracted loss."

App. LEXIS 8743, at *7 (Tex. App.—Amarillo Oct. 19, 2012, no pet.). The person who sustained the injury at issue is qualified to express an opinion about the seriousness of that injury. *See Hart v. State*, 581 S.W.2d 675, 677 (Tex. Crim. App. [Panel Op.] 1979); *Coshatt v. State*, 744 S.W.2d 633, 636 (Tex. App.—Dallas 1987, pet. ref'd); *see also Sizemore*, 2012 Tex. App. LEXIS 8743, at *7. Moreover, there are no wounds that constitute "serious bodily injury" per se. *Hernandez v. State*, 946 S.W.2d 108, 111 (Tex. App.—El Paso 1997, no pet.).

The jury was free to apply common sense, knowledge, and experience gained in the ordinary affairs of life in drawing reasonable inferences from the evidence presented to it. *Eustis*, 191 S.W.3d at 884. And based on the evidence presented of the child's injuries, we conclude that the jury could have rationally concluded that the child suffered serious bodily injuries at the hands of appellant. *See, e.g., Brown*, 605 S.W.2d at 575 (holding that the evidence was sufficient to prove "serious bodily injury" where the victim's nose was broken and deformed on the day of the offense but was later set to prevent disfigurement and impairment of function); *Eustis*, 191 S.W.3d at 884 (finding evidence that the victim was treated for two broken arms, two broken legs, and multiple contusions and bruises at various stages of healing as a result of a beating by a baseball bat was sufficient to demonstrate serious bodily injury); *Moore v. State*, 802 S.W.2d 367, 369-70 (Tex. App.—Dallas 1990, pet. ref'd) (finding sufficient evidence of serious bodily injury where the victim's cheekbone was fractured in three places and surgery was needed to prevent significant cosmetic deformity); *Pitts v. State*, 742 S.W.2d 420, 421-22 (Tex. App.—Dallas 1987, pet. ref'd) (concluding that evidence of significant

disfigurement was sufficient where the victim suffered five facial fractures). Accordingly, we hold that the evidence is sufficient to support the jury's finding that the child victim sustained serious bodily injuries due to appellant's actions. *See Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789; *Hooper*, 214 S.W.3d at 13; *see also* TEX. PENAL CODE ANN. § 1.07(a)(46). Appellant's second issue is overruled.

## C.    Deadly Weapon

In his first issue, appellant argues that the evidence is insufficient to show that he used or exhibited a deadly weapon in the commission of the charged offense. A deadly weapon is "anything that in the manner of its use or intended use is capable of causing death or serious bodily injury." TEX. PENAL CODE ANN. § 1.07(a)(17)(B). This definition does not require the State to prove that anyone actually died or suffered serious bodily injury or that the accused intended to cause serious bodily injury. *Quincy v. State*, 304 S.W.3d 489, 500 (Tex. App.—Amarillo 2009, no pet.); *see Lane v. State*, 151 S.W.3d 188, 191 (Tex. Crim. App. 2004) (stating that wounds are not a necessary prerequisite for an object to be considered a deadly weapon; but, injuries, if any, inflicted on the victim are factors to be considered in determining whether the object was used as a deadly weapon); *Baltazar v. State*, 331 S.W.3d 6, 8 (Tex. App.—Amarillo 2010, pet. ref'd). Rather, it need only prove that the weapon in question was capable of causing serious bodily injury in the way it was used or intended to be used. *Baltazar*, 331 S.W.3d at 8.

In the instant case, the child victim testified that appellant beat him with a water hose, a two-by-four board, and a golf club. Clorice stated that she observed appellant beating the child victim with the board and golf club, and Maurice noted that appellant

admitted to "whopping" the child victim with the items referenced in the child victim's testimony. Further, we have previously concluded that the jury was rationally justified in concluding that the injuries sustained by the child victim at the hands of appellant constituted serious bodily injuries. Thus, we conclude that the jury was rationally justified in concluding that the implements used by appellant—the water hose, two-by-four board, and golf club—caused or were intended to cause serious bodily injury to the child, as defined in section 1.07(a)(17)(B) of the Texas Penal Code. *See Lane*, 151 S.W.3d at 191; *Baltazar*, 331 S.W.3d at 8; *Quincy*, 304 S.W.3d at 500; *Eustis*, 191 S.W.3d at 884; *see also* TEX. PENAL CODE ANN. § 1.07(a)(17)(B). Accordingly, we hold that the evidence is sufficient to support the jury's deadly-weapon finding. *See Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789; *Hooper*, 214 S.W.3d at 13; *see also* TEX. PENAL CODE ANN. § 1.07(a)(17)(B). Appellant's first issue is overruled.

### III.   DOUBLE JEOPARDY

In his third issue, appellant contends that his conviction as to Count 2—for injury to a child by omission—should be vacated because it is the same offense for which the judgment was entered as to Count 1, violating the double-jeopardy protection against double punishment. The State concedes this issue.

In *Jefferson v. State*, the Texas Court of Criminal Appeals noted that "the essential element of focus of the statute [section 22.04 of the penal code] is the result of the defendant's conduct . . . and not the possible combinations of conduct that cause the result." 189 S.W.3d 305, 312 (Tex. Crim. App. 2006). Whether an individual acted to injure a child or injured a child by omission are simply different manner and means for

causing the same result. *See id.* Thus, the "unit of prosecution" for injury to a child is the resulting injuries, not the act or omission which caused them. *See id.*

The Fifth Amendment to the United States Constitution provides that no person "shall . . . be subject for the same offence to be twice put in jeopardy of life or limb . . . ." U.S. CONST. amend. V; *see McCrary v. State*, 327 S.W.3d 165, 176 (Tex. App.—Texarkana 2010, no pet.) (recognizing that: (1) we examine the allowable unit of prosecution, which is defined by the Legislature and determines if one course of conduct results in more than one offense; and (2) usually analysis of an allowable unit of prosecution involves a situation in which two offenses from the same statutory section are charged) (citing *Bigon v. State*, 252 S.W.3d 360, 371-72 (Tex. Crim. App. 2008); *Ex parte Cavazos*, 203 S.W.3d 333, 337 (Tex. Crim. App. 2006)); *see also Johnson v. State*, 364 S.W.3d 292, 298 (Tex. Crim. App. 2012) (noting that double-jeopardy jurisprudence requires the determination of the "allowable unit of prosecution," which constitutes the focus or gravamen of the offense, and that "[t]he aggravated assault offense at issue is a result-of-conduct crime with the focus or gravamen being the victim and the bodily injury that was inflicted."). Moreover, "[i]n the case of a double-jeopardy violation, the issue may be addressed as an unassigned error when the violation is apparent from the face of the record." *Bigon*, 252 S.W.3d at 369; *see Rangel v. State*, 179 S.W.3d 64, 70 (Tex. App.—San Antonio 2005, pet. ref'd) ("However, an appellant may raise a double jeopardy claim for the first time on appeal (1) when the undisputed facts show the double jeopardy claim violation is clearly apparent from the face of the record, and (2) when the enforcement of the usual rules of procedural default serve no legitimate state purpose.").

Here, it is undisputed that the error appellant complains about is apparent from the face of the record. *See Bigon*, 252 S.W.3d at 369; *see also Rangel*, 179 S.W.3d at 70. Therefore, because appellant was convicted in two counts for the same resulting injuries, we agree that appellant's convictions violated the Double Jeopardy Clause of the United States Constitution. *See* U.S. CONST. amend V; *see also Jefferson*, 189 S.W.3d at 312. Accordingly, appellant's third issue is sustained.

## IV.    CONCLUSION

Having concluded that appellant's convictions violate the Double Jeopardy Clause, we reverse and render a judgment of acquittal as to Count 1. *See Bigon*, 252 S.W.3d at 372 ("When a defendant is subjected to multiple punishments for the same conduct, the remedy is to affirm the conviction for the most serious offense and vacate the other convictions.") (citing *Ex parte Cavazos*, 203 S.W.3d at 337; *Landers v. State*, 957 S.W.2d 558, 559-60 (Tex. Crim. App. 1997)). We reverse appellant's conviction in Count 1 because he received a lesser sentence in Count 1—fifty years—as opposed to Count 2—sixty years. *See id.* at 373 (noting that the most serious offense is the offense in which the greatest sentence was assessed). Appellant has not challenged his conviction as to Count 2. Accordingly, we affirm appellant's conviction in Count 2.


AL SCOGGINS
Justice

Before Chief Justice Gray,
      Justice Davis, and
      Justice Scoggins
      (Chief Justice Gray dissenting)
Affirmed, in part, and reversed and rendered, in part
Opinion delivered and filed February 14, 2013
Publish
[CRPM]