

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
### FORT WORTH

**NO. 02-13-00221-CR**

JUAN BLEA                                                    APPELLANT

V.

THE STATE OF TEXAS                                               STATE

----------

FROM THE 362ND DISTRICT COURT OF DENTON COUNTY
TRIAL COURT NO. F-2011-0993-D

----------

## DISSENTING MEMORANDUM OPINION[1]

----------

Because the majority's opinion improperly applies standards for reviewing the sufficiency of evidence to show that the victim suffered serious bodily injury, I dissent from the decision to reverse the trial court's judgment and to remand for the entry of a judgment that reflects only a second-degree felony conviction.[2]

---

[1]*See* Tex. R. App. P. 47.4, 47.5.

[2]*See* Tex. Penal Code Ann. § 22.02(b)(1) (West 2011).

When deciding an evidentiary sufficiency issue in a criminal appeal, our usual deference to a jury's verdict requires us to weight appellate scales in favor of affirming a judgment of conviction. *See Winfrey v. State*, 323 S.W.3d 875, 879 (Tex. Crim. App. 2010). We do so by applying settled principles aimed at preventing us from becoming a "thirteenth juror." *See Thornton v. State*, 425 S.W.3d 289, 303 (Tex. Crim. App. 2014); *Isassi v. State*, 330 S.W.3d 633, 638 (Tex. Crim. App. 2010) (explaining that in reviewing the sufficiency of evidence to support a conviction, we guard "against the rare occurrence when a factfinder does not act rationally"). Those principles include considering the evidence, along with reasonable inferences from the evidence, in the light most favorable to the verdict; deferring to the factfinder's exclusive role to resolve conflicts in the evidence (and inferences therefrom)[3] and to judge the credibility of witnesses; assessing incriminating evidence cumulatively rather than requiring each fact to directly support guilt; allowing for circumstantial evidence alone to support a conviction; and recognizing that a factfinder is free to accept or reject any or all of the testimony of any witness. *Whatley v.* State, 445 S.W.3d 159, 166 (Tex. Crim. App. 2014); *Thomas v. State*, 444 S.W.3d 4, 8 (Tex. Crim. App. 2014); *Dobbs v. State*, 434 S.W.3d 166, 170 (Tex. Crim. App. 2014); *Hernandez v. State*, 161 S.W.3d 491, 500–01 (Tex. Crim. App. 2005).

---

[3]The majority appears to resolve conflicts in witnesses' testimony against the jury's verdict. *See* Majority Op. at 8–10.

In showing fidelity to these principles in this appeal, we should determine that the evidence is sufficient to prove that the complainant suffered serious bodily injury, meaning bodily injury[4] that created "a substantial risk of death . . . or protracted loss or impairment of the function of any bodily member or organ." Tex. Penal Code Ann. § 1.07(a)(46); *see id.* § 22.02(a)(1), (b)(1). The complainant testified that as a result of appellant's hitting her side repeatedly, she felt "a lot of pain" in her back and chest and could not breathe. She believed that she had been "terribly injured." Appellant's father noticed that the complainant had difficulty walking. Hospital personnel told her that she had a collapsed lung, among other injuries. The complainant stayed in a hospital several days, and a "month or so" passed before she was able to return to work.

Kristie Brown, a nurse practitioner, confirmed that the complainant had suffered a lung injury. Concerning that injury—a pneumothorax—Brown testified,

> if you have a box and a balloon blown up inside the box and the balloon shrinks over time, there is air between the box and the balloon, that is a pneumothorax. Most of the time, the lungs should be expanded in our chest and touching the sides of the box, but when the lung collapses, it's just like a balloon that has a small leak in it and collapses down.
>
> When that occurs, the patient, [the complainant], can have trouble breathing, and it can affect blood pressure, vital signs that we look at.

---

[4]"Bodily injury" includes pain or any impairment of physical condition. Tex. Penal Code Ann. § 1.07(a)(8) (West Supp. 2014).

The complainant's mother testified that while in the hospital, the complainant was not able to move around the room, and treatment for her collapsed lung required the insertion of a chest tube. According to the complainant's mother, after the complainant left the hospital, she could not work or walk without pain for some time, and when she returned to work, she was instructed to not lift anything over twenty-five pounds.

While it is true that the complainant's condition improved upon medical treatment, in determining whether evidence is sufficient to establish serious bodily injury, the relevant issue is the impairing effect of the bodily injury as it was inflicted, not after the effects have been ameliorated by medical treatment. *Jackson v. State*, 399 S.W.3d 285, 291 (Tex. App.—Waco 2013, no pet.) (mem. op.); *see Webb v. State*, 801 S.W.2d 529, 532 (Tex. Crim. App. 1990); *Sizemore v. State*, 387 S.W.3d 824, 828 (Tex. App.—Amarillo 2012, pet. ref'd). And serious bodily injury may be established without a physician's testimony when the injury and its effects are obvious. *Sizemore*, 387 S.W.3d at 828.

Brown testified that injuries to lungs are treated seriously because the lungs control oxygenation and affect blood pressure and "vital signs." Brown also explained that improper oxygenation can cause death. Thus, the jury could have reasonably inferred that if the complainant had not received the procedure that Brown described (presumably, the tube that the complainant's mother testified about) to help with her difficulty in breathing, the complainant faced a substantial risk of death. *See id.*; *see also Patterson v. State*, No. 11-06-00209-CR, 2008

4

WL 564880, at *3 (Tex. App.—Eastland Feb. 28, 2008, pet. ref'd) (not designated for publication) (concluding that testimony that the victim had trouble breathing and received treatment for a pneumothorax that if left untreated, could cause death, was sufficient to prove that the victim had a serious bodily injury); *Pedro v. State*, No. 01-88-00197-CR, 1988 WL 139708, at *2 (Tex. App.—Houston [1st Dist.] Dec. 22, 1988, no pet.) (not designated for publication) ("[T]he possibility that [a collapsed lung] could cause death, combined with the testimony that the complainant's lung was punctured, does support a finding that [a knife] was capable of causing 'serious bodily injury.'").

Viewing the evidence in the light most favorable to the verdict and allowing the jury to draw reasonable inferences from the evidence, I would hold that based at least on the facts concerning the injury to the complainant's lung, that this injury required treatment through a tube, and that injuries to lungs can be life-threatening, the evidence was sufficient for the jury to find that without treatment, the complainant faced a substantial risk of death. *See* Tex. Penal Code Ann. § 1.07(a)(46).

Moreover, I would also conclude that the evidence was sufficient to show that the complainant sustained a serious bodily injury because she suffered from a protracted impairment of the functioning of her body. *See id.* The complainant testified that the injuries she suffered as a result of the assault required her to miss a "month or so" of work. Her mother testified that during that time, the complainant "couldn't work" and just "[laid] around" because walking was painful.

5

I would hold that these month-long effects from the assault qualify as a "protracted" impairment of the complainant's bodily functions. *See id.*; *Williams v. State*, 575 S.W.2d 30, 33 (Tex. Crim. App. [Panel Op.] 1979) (holding "that the injury which caused [the victim] to lose lifting power in his arm for three months" constituted a protracted impairment of the function of a bodily member, so that "the wound would be classified as serious bodily injury"); *Madden v. State*, 911 S.W.2d 236, 244–45 (Tex. App.—Waco 1995, pet. ref'd) (concluding that there was serious bodily injury by protracted impairment of a bodily member when the victim was shot in the hip, hospitalized for a day and a half, could not walk for a month after the shooting, and had permanent scar tissue where the bullet entered and exited his body); *see also Tucker v. State*, No. 05-01-01899-CR, 2002 WL 32397713, at *1–2 (Tex. App.—Dallas Oct. 30, 2002, no pet.) (not designated for publication) (holding that there was protracted impairment when the victim had a fractured jaw, was restricted to a liquid diet for three weeks, and had jaw pain for a month).

For all of these reasons, I respectfully dissent from the majority's opinion and judgment.

/s/ Terrie Livingston
TERRIE LIVINGSTON
CHIEF JUSTICE

DO NOT PUBLISH
Tex. R. App. P. 47.2(b)

DELIVERED: February 5, 2015