Patrick Demon STEWART, Appellant

v.

The STATE of Texas, Appellee

No. 06–15–00120–CR

Court of Appeals of Texas, Texarkana.

Submitted: December 29, 2015

Decided: January 22, 2016

Stan Schwieger, Law Office of Stan Schwieger, Waco, TX, for appellant

Cari Warner, Christopher E. Martin, Freestone District & County Attorney, Fairfield, TX, for appellee

Before Morriss, C.J., Moseley and Burgess, JJ.

## OPINION

Opinion by Justice Burgess

Patrick Demon Stewart was convicted by a Freestone County jury of burglary of a building and was sentenced to two years' imprisonment. In his sole point of error on appeal, Stewart argues that the evidence is legally insufficient to support the

jury's verdict.[1] We disagree. Accordingly, we affirm the trial court's judgment.

## I. Standard of Review

In *Lucio v. State*, the Texas Court of Criminal Appeals expressed the standard of review for a sufficiency issue as follows:

> In determining whether the evidence is legally sufficient to support a conviction, a reviewing court must consider all of the evidence in the light most favorable to the verdict and determine whether, based on that evidence and reasonable inferences therefrom, a rational fact finder could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 318–19, 99 S.Ct. 2781, 61 L.Ed.2d 560, (1979); *Hooper v. State*, 214 S.W.3d 9, 13 (Tex.Crim.App.2007). This "familiar standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Jackson*, 443 U.S. at 319, 99 S.Ct. 2781. "Each fact need not point directly and independently to the guilt of the appellant, as long as the cumulative force of all the incriminating circumstances is sufficient to support the conviction." *Hooper*, 214 S.W.3d at 13.

*Lucio v. State*, 351 S.W.3d 878, 894 (Tex.Crim.App.2011). "If the record supports conflicting inferences, we must presume that the factfinder resolved the conflicts in favor of the prosecution and therefore defer to that determination." *Kelly v. State*, 453 S.W.3d 634, 636 (Tex. App.–Waco 2015, pet. ref'd) (citing *Jackson*, 443 U.S. at 326, 99 S.Ct. 2781).

"The sufficiency of the evidence is measured by reference to the elements of the offense as defined by a hypothetically correct jury charge for the case." *Jackson v. State*, 399 S.W.3d 285, 290 (Tex. App.–Waco 2013, no pet.) (citing *Malik v. State*, 953 S.W.2d 234, 240 (Tex.Crim.App. 1997)). A hypothetically correct jury charge "accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried." *Malik v. State*, 953 S.W.2d 234, 240 (Tex.Crim.App.1997).

"A person commits an offense if, without the effective consent of the owner, the person: (1) enters a ... building ... not then open to the public, with intent to commit a felony, theft, or an assault." TEX. PENAL CODE ANN. § 30.02(a)(1) (West 2011). Here, the State alleged, and was required to prove, that with the intent to commit theft, Stewart entered a private building belonging to Johnny Burt without his consent. Stewart concedes that he entered the building without Johnny's effective consent. Stewart argues only that the evidence is legally insufficient to establish that he entered the building with the intent to commit theft.

## II. The Evidence at Trial

Johnny and his wife, Linda, live in a remote cabin off of County Road 1124. At trial, they testified that they became alarmed on the night of September 20, 2014, when their motion detecting lights illuminated. Through their "full glass door," Johnny and Linda saw that Stewart

---

1. Originally appealed to the Tenth Court of Appeals in Waco, this case was transferred to this Court by the Texas Supreme Court pursuant to its docket equalization efforts. *See* TEX. GOV'T CODE ANN. § 73.001 (West 2013). We follow the precedent of the Tenth Court of Appeals in deciding this case. *See* TEX.R.APP. P. 41.3.

was attempting to enter their home. Johnny testified, "[Stewart] grabbed the kno[b], was trying to turn it, my wife grabbed it, and I grabbed my pistol and walked outside and asked him what he was doing there." According to Johnny, Stewart stated that "he was looking for Gate 7" and "Gate 9" and then rattled off a few names that Johnny did not recognize.[2] Johnny informed Stewart that he was in the wrong place and instructed him to get off of his property. Stewart walked away, and Johnny assumed that he had left.

Feeling uneasy, Linda informed Johnny that she believed Stewart was still on the property. They both then got in a vehicle, drove toward a large, metal shop on their property, and found Stewart exiting the shop with a bag from a funeral home containing Johnny's "grandfather's papers." According to Johnny, even though the words "Memorial Records" were written on the bag, the bag appeared to be a "money ba[g] from the bank." Johnny approached Stewart with his pistol and commanded him "against the building." When Linda told Johnny to call 9–1–1, Johnny lamented that he had failed to bring his cell phone. In response, Stewart relinquished his own cell phone, which Johnny used to call 9–1–1.

Sergeant Scott Shaw, Deputy Travis Martin, and Officer Penny Sue Eubanks, all with the Freestone County Sheriff's Office, responded to the call and arrested Stewart. After they had secured Stewart, Johnny went into the shop and discovered that "every drawer and box was open," tires had been removed from a car that was in the shop, and items had been taken from the trunk of that car. He also noticed that a pistol stored in the shop had been loaded with the wrong ammunition, rendering it unusable. Martin testified,

"[Y]ou could just tell there was some things that were just kind of rummaged through."

According to Eubanks, Stewart claimed that his vehicle was broken down and that he was in the shop looking for gas. Earlier in the night, Eubanks had impounded a nearby vehicle that was abandoned in the middle of the road. Johnny testified that Stewart never claimed that his vehicle had broken down. The jury found that Stewart had entered the shop with the intent to commit theft.

### III. Sufficient Evidence Supports the Jury's Finding of Guilt

■ "It is well settled that the intent to commit theft may be inferred from the circumstances." *Lewis v. State*, 715 S.W.2d 655, 657 (Tex.Crim.App.1986); *see Guevara v. State*, 152 S.W.3d 45, 50 (Tex. Crim.App.2004) ("Intent may also be inferred from circumstantial evidence such as acts, words, and the conduct of the appellant.").

■ Here, the jury heard that Stewart had approached a remote cabin at night and attempted to open the door. He failed to leave the property, even after being warned to do so at gunpoint. Instead, the evidence at trial established that Stewart entered the Burts' shop and rummaged through it. He removed tires and other items from a car that was in the shop, and appeared to have loaded a gun that was stored in the shop with the wrong ammunition. The jury was free to determine that Stewart was looking for valuables and had the intent to deprive the Burts of the property that was misplaced. Importantly, Stewart was caught exiting the Burts' shop with a bag that looked like a bank deposit bag.

---

**2.** Linda spoke with her neighbor, James Albin, who said that Stewart had also approached their property looking for "Gate No. 7."

Viewing the record in a light most favorable to the jury's verdict, we find the evidence legally sufficient to support the jury's finding that Stewart entered the shop with the intent to commit theft. Accordingly, we overrule Stewart's sole point of error.

## IV. Conclusion

We affirm the trial court's judgment.