# NOS. 12-22-00146-CR
# 12-22-00147-CR

# IN THE COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT

# TYLER, TEXAS

| | | |
|---|---|---|
| *ZENAS MONTRE WHITAKER,* *APPELLANT* | § | *APPEAL FROM THE 273RD* |
| | § | *DISTRICT COURT* |
| *V.* | | |
| | § | *SHELBY COUNTY, TEXAS* |
| *THE STATE OF TEXAS,* *APPELLEE* | | |

## *MEMORANDUM OPINION*

Zenas Montre Whitaker appeals his convictions for aggravated assault with a deadly weapon and aggravated kidnapping. In two issues, Appellant challenges the sufficiency of the evidence. We affirm.

## BACKGROUND

Appellant was charged by indictment with aggravated assault with a deadly weapon against a family member causing serious bodily injury,[1] aggravated kidnapping,[2] and aggravated sexual assault. He pleaded "not guilty," and the matter proceeded to a jury trial.

At trial, the evidence showed that Appellant and Donna[3] met as teenagers and had a dysfunctional relationship for several years. At the time of the offense, they had a two-year-old

---

[1] A first-degree felony, punishable by imprisonment for a term of life, or not more than ninety-nine years or less than five years, and a possible fine not to exceed $10,000.00. *See* TEX. PENAL CODE ANN. §§ 22.02(a), (b)(1) (West Supp. 2022); 12.32 (West 2019).

[2] A first-degree felony, punishable by imprisonment for a term of life, or not more than ninety-nine years or less than five years, and a possible fine not to exceed $10,000.00. *See id.* §§ 20.04(b), (c) (West 2019); 12.32.

[3] A pseudonym.

daughter, Maggie.[4] About seven months before the offense date, Appellant and Donna entered rehabilitation centers at CPS's request. Donna successfully completed her rehabilitation in three months, moved in with her sister, continued to comply with CPS requests, and remained clean and sober. Appellant, however, failed to comply with further CPS requests and continued using methamphetamine. Donna's CPS caseworker told her to have no contact with Appellant.

Appellant and Donna related somewhat different stories about how the incident began, but both agreed that Appellant entered Donna's home, brutally beat her with a bat, took Donna's cell phone and Maggie, and left Donna at the house with the four small children she was babysitting. Donna walked to a neighbor's house and called 911 but lost consciousness shortly after the police arrived. She spent four days in the hospital recovering from her injuries.

Ultimately, the jury found Appellant "guilty" of aggravated assault with a deadly weapon against a family member causing serious bodily injury and aggravated kidnapping, and "not guilty" of aggravated sexual assault. After hearing the punishment evidence, the jury assessed Appellant's punishment at imprisonment for sixty years and a $10,000.00 fine in the aggravated assault case and imprisonment for forty-five years in the aggravated kidnapping case. This appeal followed.

## EVIDENTIARY SUFFICIENCY

In Appellant's sole issue in the aggravated assault case, he argues that the evidence is insufficient to prove Donna suffered serious bodily injury. In a single issue in the aggravated kidnapping case, he argues the evidence is insufficient to prove 1) any of the aggravating factors listed in Texas Penal Code Section 20.04(a) and 2) that he abducted Maggie.

## Standard of Review and Applicable Law

The ***Jackson v. Virginia***[5] legal sufficiency standard is the only standard that a reviewing court should apply in determining whether the evidence is sufficient to support each element of a criminal offense that the state is required to prove beyond a reasonable doubt. *See **Brooks v. State***, 323 S.W.3d 893, 895 (Tex. Crim. App. 2010). Legal sufficiency is the constitutional minimum required by the Due Process Clause of the Fourteenth Amendment to sustain a criminal conviction. *See **Jackson***, 443 U.S. at 315-16, 99 S. Ct. at 2686-87; *see also **Escobedo v.**

---

[4] A pseudonym.

[5] 443 U.S. 307, 315-16, 99 S. Ct. 2781, 2786-87, 61 L. Ed. 2d 560 (1979).

2

*State*, 6 S.W.3d 1, 6 (Tex. App.—San Antonio 1999, pet. ref'd). The standard for reviewing a legal sufficiency challenge is whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *See Jackson*, 443 U.S. at 320, 99 S. Ct. at 2789; *see also Johnson v. State*, 871 S. W.2d 183, 186 (Tex. Crim. App. 1993). The evidence is examined in the light most favorable to the verdict. *See Jackson*, 443 U.S. at 320, 99 S. Ct. at 2789; *Johnson*, 871 S.W.2d at 186. This requires the reviewing court to defer to the jury's credibility and weight determinations, because the jury is the sole judge of the witnesses' credibility and the weight to be given their testimony. *Brooks*, 323 S.W.3d at 899; *see Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789. A "court faced with a record of historical facts that supports conflicting inferences must presume—even if it does not affirmatively appear in the record—that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution." *Jackson*, 443 U.S. at 326, 99 S. Ct. at 2793. A successful legal sufficiency challenge will result in rendition of an acquittal by the reviewing court. *See Tibbs v. Florida*, 457 U.S. 31, 41-42, 102 S. Ct. 2211, 2217-18, 72 L. Ed 2d 642 (1982).

The sufficiency of the evidence is measured against the offense as defined by a hypothetically correct jury charge. *See Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997). Such a charge would include one that "accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the state's burden of proof or unnecessarily restrict the state's theories of liability, and adequately describes the particular offense for which the defendant is tried." *Id.*

**<u>Aggravated Assault</u>**

To prove Appellant guilty as charged in the aggravated assault indictment, the State was required to prove that 1) he intentionally, knowingly, or recklessly caused serious bodily injury to Donna by striking her with a baseball bat, 2) the bat was a deadly weapon, and 3) Appellant and Donna are the parents of the same child. *See* TEX. PENAL CODE ANN. § 22.02(b)(1). Appellant argues the evidence fails to show that Donna's injuries rise to the level of serious bodily injury. We disagree.

"Serious bodily injury" is bodily injury that "creates a substantial risk of death or that causes death, serious permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ." *Id.* § 1.07(a)(46) (West 2021). "[T]here are no wounds that constitute 'serious bodily injury'" per se. *Jackson v. State*, 399 S.W.3d 285, 292 (Tex. App.—

Waco 2013, no pet.) (quoting **Hernandez v. State**, 946 S.W.2d 108, 111 (Tex. App.—El Paso 1997, no pet.)). Instead, we must determine whether an injury constitutes serious bodily injury on a case by case basis, evaluating each case on its own facts to determine whether the evidence is sufficient to permit the finder of fact to conclude that the injury fell within the definition of "serious bodily injury." *See* **Moore v. State**, 739 S.W.2d 347, 352 (Tex. Crim. App. 1987); **Eustis v. State**, 191 S.W.3d 879, 884 (Tex. App.—Houston [14th Dist.] 2006, pet. ref'd).

We evaluate the degree of risk posed by an injury, or its disfiguring or impairing qualities, based on the injury as inflicted rather than after the ameliorating effects of medical treatment. **Garcia v. State**, 667 S.W.3d 756, 763 (Tex. Crim. App. 2023). The definition of serious bodily injury refers to the injury caused by the offender and does not require consideration of any medical treatment that may have lessened the impact of the injury. **Id.** Thus, in determining whether an injury creates a substantial risk of death, we consider the disfiguring and impairing quality of the injury as inflicted by the offender and not the amelioration or exacerbation of the injury by the actions of others. **Id.**

Serious bodily injury may be established without a physician's testimony when the injury and its effects are obvious. **Wade v. State**, 663 S.W.3d 175, 185 (Tex. Crim. App. 2022). The person who sustained the injury at issue is qualified to express an opinion about the injury's seriousness. *See* **Hart v. State**, 581 S.W.2d 675, 677 (Tex. Crim. App. [Panel Op.] 1979); **Jackson**, 399 S.W.3d at 292. In determining whether bodily injury is serious, the jury may apply its common sense, knowledge, and experience gained in the ordinary affairs of life as it draws reasonable inferences from the evidence. **Eustis**, 191 S.W.3d at 884.

Although Appellant argues that his assault on Donna posed "no real substantial risk of death," an abundance of evidence in this case supports a finding that the assault posed a substantial risk of death and therefore constituted serious bodily injury. Center Police Department Detective Bobby Walker testified that about seventeen days before the offense, Donna reported a terroristic threat event in which Appellant threatened to kill her. Based on her report and text message evidence she provided, a justice of the peace issued a warrant for Appellant's arrest. In one message, Appellant said that he did not care about the death sentence. In another, he stated, "You have till midnight. Otherwise, you'll be missed."

Donna confirmed in her testimony that in the weeks prior to the attack, Appellant repeatedly threatened to kill her. She testified that on the day of the attack, Appellant called and

4

told her that CPS was sending him for a drug test, he was allowed to see Maggie, and he was coming to the house. Donna called her caseworker, who told her to call the police if Appellant appeared at the house. Soon, Donna heard a noise outside and then heard the locked kitchen door open. When she entered the kitchen, Appellant began hitting her with a bat, stating that "if he couldn't have [Donna], nobody would," and "he [couldn't] believe he hasn't seen [her] last breath already." At some point, Appellant took Donna into the living room and continued beating her with the bat and kicking her in the stomach with his steel-toed boots in front of the children. Donna estimated that Appellant beat her for around forty-five minutes. After the first blow to her head, she felt pain, shock, disorientation, and dizziness, and had trouble maintaining consciousness. Donna believed that she was going to die.

Donna further testified that she has continuing pains that she did not have before the attack. The sciatic nerve in her back is damaged and causes problems. Dr. Jeff McWilliams, who treated Donna in the emergency room in Center, testified that blunt force trauma to the spine can cause prolonged sciatic nerve issues. Donna said that she now needs glasses to see properly and has migraines. According to McWilliams, blunt force trauma to the head can cause post-concussive syndrome symptoms, which can include "pretty devastating headaches" for a prolonged time. Donna testified that one of her teeth was broken in half during the attack, exposing the nerve and causing pain in response to hot or cold temperatures. Additionally, Donna said that her nasal septum was deviated, causing her difficulty in breathing. Her records from Nacogdoches Medical Center, where she was transferred after receiving emergency treatment, confirm that she had a "nasal fracture with deviated septum."

Appellant testified that he used methamphetamine sometime before the attack but was not high to his knowledge at the time of the offense. On the morning of the offense, he went to the CPS office to ask whether any court order or open case prohibited him from seeing Maggie. He then called and told Donna that he was coming to her house. According to Appellant, Donna let him in the house, and they talked. When Donna saw a text message from another woman on his phone, she started "going off" on Appellant, everything went haywire, and "the bat was picked up." Appellant kicked Donna and struck her many times before he left. After the attack, he was sore from swinging the bat with such extraordinary force. Appellant was "worried" that Donna might have died but did not call for help. Appellant admitted that he threatened Donna's life on multiple prior occasions but claimed he did not go to her house that day to kill her.

5

Center Police Department Officer Maegan Wright testified that when she arrived at the scene, she saw a large amount of blood "just about on every surface in the living room following from the kitchen to the living room." Donna's face was swollen. One eye was completely swollen shut. She had bruises on her abdomen and legs and blood all over her shirt. Donna was initially able to relay information but soon lost consciousness. At that point, Wright considered Donna's injuries life threatening. Later, at the hospital, Wright observed a puncture wound to Donna's temple "extremely close" to her eye. Wright opined that the injuries constituted serious bodily injury.

Pictures and Officer Wright's body cam video of Donna and the bloody scene were admitted into evidence. On the video, about a minute after Wright begins questioning her, Donna states that she thinks she is going to pass out. Midsentence, Donna lies back on the mattress on which she is seated. Wright asks if Donna can sit upright and speak with her. She tries but fails. Donna sobs, moans, breathes heavily, and appears desperate for the police to rescue Maggie. Several minutes later, Donna is unresponsive. An emergency medical technician pleads with Donna to stay with her and not "sleep."

Dr. McWilliams testified that when Donna arrived at the emergency room, she was alert but disoriented. He treated her for multiple lacerations and blunt force trauma to her face and extremities. McWilliams said that Donna lost a tooth.[6] He opined that significant force was required to cause the bruise pattern of the striking instrument that appeared on Donna's body. McWilliams agreed that a baseball bat could cause death and Donna's injuries constituted serious bodily injury. He said that she was transferred to Nacogdoches Medical Center for multiple reasons, including high blood sugar. Dr. McWilliams said that one possible reason for high blood sugar is trauma. Donna's medical records from Nacogdoches Medical Center indicate that the next day, her blood sugar level was back to normal, there was no evidence of diabetes, and the doctor there suspected her elevated blood sugar level and leukocytosis from the previous day were caused by a stress reaction.

Sexual assault nurse examiner (SANE) Veronica Sjolander testified that when she examined Donna approximately twenty-four hours after the assault, she had many injuries, a

---

[6] Donna's medical records from Nacogdoches Medical Center indicate that her right front tooth was chipped.

headache, blurred vision, a broken upper front tooth, and a large amount of swelling. Donna's eyes were swollen shut to the point that Sjolander could not examine them.

Viewing all the evidence in the light most favorable to the jury's verdict, we conclude that the jury was rationally justified in finding, beyond a reasonable doubt, that absent timely medical treatment, Donna's injuries posed a substantial risk of death and therefore constituted serious bodily injury. *See* TEX. PENAL CODE ANN. § 1.07(a)(46); ***Jackson***, 443 U.S. at 319, 99 S. Ct. at 2789; ***Garcia***, 667 S.W.3d at 764 (evidence that victim's gunshot wounds caused significant bleeding and loss of consciousness, along with treating physician's opinions that gunshot wounds can cause death and victim's injuries constituted serious bodily injury, was sufficient basis for finding victim faced substantial risk of death absent timely medical treatment); *see also* ***Brooks***, 323 S.W.3d at 899. Accordingly, we overrule Appellant's sole issue in the aggravated assault case.

## Aggravated Kidnapping

To prove Appellant guilty as charged in the aggravated kidnapping indictment, the State was required to prove that he 1) intentionally or knowingly abducted Maggie and 2) used or exhibited a deadly weapon, specifically a bat, during the commission of the offense. *See* TEX. PENAL CODE ANN. § 20.04(b). Appellant first argues that to sustain an aggravated kidnapping conviction, the state was required to prove the elements stated in subsection (b) of penal code section 20.04 and one of the aggravating factors listed in subsection (a). We disagree.

Subsections (a) and (b) of the aggravated kidnapping statute read as follows:

    (a) A person commits an offense if he intentionally or knowingly abducts another person with the intent to:

        (1) hold him for ransom or reward;

        (2) use him as a shield or hostage;

        (3) facilitate the commission of a felony or the flight after the attempt or commission of a felony;

        (4) inflict bodily injury on him or violate or abuse him sexually;

        (5) terrorize him or a third person; or

        (6) interfere with the performance of any governmental or political function.

    (b) A person commits an offense if the person intentionally or knowingly abducts another person and uses or exhibits a deadly weapon during the commission of the offense.

7

*Id.* § 20.04(a), (b).

The plain language of the statute requires the state to prove the elements of subsection (a) or (b), not both. *See* ***Laster v. State***, 275 S.W.3d 512, 521 (Tex. Crim. App. 2009) ("A kidnapping is aggravated when a defendant intentionally or knowingly abducts another: (1) with the specific intent to accomplish one of six purposes or (2) 'uses or exhibits a deadly weapon during the commission of the offense.'"). If the legislature intended a different result, it could have used the conjunctive "and" to combine the requirements of subsection (a) with subsection (b)'s "uses or exhibits a deadly weapon during the commission of the offense" requirement. Accordingly, we overrule this part of Appellant's sole issue in the aggravated kidnapping case.

Next, Appellant argues that the State failed to prove an "abduction" occurred in this case because he neither 1) secreted or held Maggie in a place where she was not likely to be found nor 2) prevented her from leaving his presence by restraining or threatening her with force. We disagree with Appellant that the State failed to prove he abducted Maggie.

"'Abduct' means to restrain a person with intent to prevent his liberation by 1) secreting or holding him in a place where he is not likely to be found, or 2) using or threatening to use deadly force." TEX. PENAL CODE ANN. § 20.01(2) (West Supp. 2022).

> "Restrain" means to restrict a person's movements without consent, so as to interfere substantially with the person's liberty, by moving the person from one place to another or by confining the person. Restraint is "without consent" if it is accomplished by:
>
> (A) force, intimidation, or deception; or
>
> (B) any means, including acquiescence of the victim, if:
>
> (i) the victim is a child who is less than 14 years of age or an incompetent person and the parent, guardian, or person or institution acting in loco parentis has not acquiesced in the movement or confinement; or
>
> (ii) the victim is a child who is 14 years of age or older and younger than 17 years of age, the victim is taken outside of the state and outside a 120-mile radius from the victim's residence, and the parent, guardian, or person or institution acting in loco parentis has not acquiesced in the movement.

*Id.* § 20.01(1) (West Supp. 2022). Secretion and the use of deadly force are part of the mens rea of kidnapping, not the actus reus as Appellant's argument presumes. ***Brimage v. State***, 918 S.W.2d 466, 475 (Tex. Crim. App. 1994). "A kidnapping becomes a completed offense when a restraint is accomplished, and there is evidence that the actor intended to prevent liberation and that he intended to do so by either secretion of the use or threatened use of deadly force." ***Mason***

***v. State***, 905 S.W.2d 570, 575 (Tex. Crim. App. 1995). Therefore, the State had the burden to prove that a restraint was completed and Appellant evidenced a specific intent to prevent Maggie's liberation by either secretion or deadly force. *See **id.***

The evidence is sufficient to show that a restraint was completed and Appellant had a specific intent to prevent Maggie's liberation by secreting or holding her in a place where she was not likely to be found. Appellant arrived at Donna's house on the morning of the offense in his mother's car, brutally beat Donna with a baseball bat, bit Donna to extract Maggie from her arms, and left in the car with Donna's phone and Maggie. After Donna reported the incident to the police, they issued an Amber Alert for Maggie. Based on the police's knowledge of Appellant, they were able to locate the car he was driving outside a camper trailer in Nacogdoches County, but neither Appellant nor Maggie was present at the location. That evening, the police spoke with Donna at the hospital seeking additional leads. Donna first suggested Appellant's mother, aunt, grandmother, and grandfather. In response to further questioning, she stated that Appellant had several brothers, including one who lived in Alto, but she did not know exactly where. The police found the house in Alto in the early hours of the next morning. They first spoke with some of Appellant's family members, who were initially uncooperative but eventually told them that Appellant was in the house. The police initiated contact with Appellant by loud hailer and he surrendered about two minutes later, at around 7:00 a.m. While SWAT personnel were clearing the residence for safety, the police took possession of Maggie. We conclude this evidence is sufficient to show that Appellant restrained Maggie, a child who was less than fourteen years of age, by moving her from one place to another without Donna's acquiescence, with intent to prevent her liberation by secreting or holding her in a place where she was not likely to be found. *See **Sanders v. State***, 605 S.W.2d 612, 614 (Tex. Crim. App. 1980) (evidence of intent to secrete or hold sufficient when victim was held in "an automobile being driven on city streets—where he was not found for approximately one hour."). Therefore, the evidence is sufficient to show that Appellant abducted Maggie. *See* TEX. PENAL CODE ANN. § 20.01(1)(B)(i), (2)(A).

In arguing that the evidence fails to show he "abducted" Maggie, Appellant emphasizes that no court order was in effect to prevent him from exercising lawful possession of her. Essentially, he argues that the absence of such an order is an affirmative defense to aggravated kidnapping. He cites no authority for this argument. *See* TEX. R. APP. P. 38.1(i) (requiring brief

to contain clear and concise argument with appropriate citations to authorities). The State observes that while the kidnapping statute provides an affirmative defense under certain circumstances when the actor was a relative intending to assume lawful control of the victim, the aggravated kidnapping statute provides no such defense. *Compare* TEX. PENAL CODE ANN. § 20.03 (West 2019) *with* ***id.*** § 20.04. Consequently, the State argues, "even though [Appellant] is [Maggie's] father, he was not permitted to 'assume lawful control' of [Maggie] by wielding a deadly weapon." We agree. Appellant cannot claim the kidnapping statute's lawful control affirmative defense in his aggravated kidnapping case. *See* ***Rue v. State***, 288 S.W.3d 107, 111 n.3 (Tex. App.—Houston [1st Dist.] 2009, pet. ref'd) ("[Section 20.03's] affirmative defense is not permitted for aggravated kidnapping.").

Viewing all the evidence in the light most favorable to the jury's verdict, we conclude that the jury was rationally justified in finding, beyond a reasonable doubt, that Appellant committed aggravated kidnapping. *See* TEX. PENAL CODE ANN. § 22.02(b); ***Jackson***, 443 U.S. at 319, 99 S. Ct. at 2789; *see also* ***Brooks***, 323 S.W.3d at 899. Accordingly, we overrule Appellant's sole issue in the aggravated kidnapping case.

## DISPOSITION

Having overruled Appellant's sole issue in each case, we ***affirm*** the trial court's judgment.

Opinion delivered June 30, 2023.
*Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.*

(DO NOT PUBLISH)



# COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT OF TEXAS

# JUDGMENT

JUNE 30, 2023

NO. 12-22-00146-CR

**ZENAS MONTRE WHITAKER,**
Appellant
V.
**THE STATE OF TEXAS,**
Appellee

Appeal from the 273rd District Court

of Shelby County, Texas (Tr.Ct.No. 2021-CR-21746)

THIS CAUSE came to be heard on the appellate record and briefs filed herein, and the same being considered, it is the opinion of this court that there was no error in the judgment.

It is therefore ORDERED, ADJUDGED and DECREED that the judgment of the court below **be in all things affirmed**, and that this decision be certified to the court below for observance.

James T. Worthen, Chief Justice.
*Panel consisted of Worthen, C.J., Hoyle, J. and J., Neeley*



# COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT OF TEXAS

# JUDGMENT

JUNE 30, 2023

NO. 12-22-00147-CR

**ZENAS MONTRE WHITAKER,**
Appellant
V.
**THE STATE OF TEXAS,**
Appellee

Appeal from the 273rd District Court

of Shelby County, Texas (Tr.Ct.No. 2021-CR-21949)

THIS CAUSE came to be heard on the appellate record and briefs filed herein, and the same being considered, it is the opinion of this court that there was no error in the judgment.

It is therefore ORDERED, ADJUDGED and DECREED that the judgment of the court below **be in all things affirmed**, and that this decision be certified to the court below for observance.

James T. Worthen, Chief Justice.
*Panel consisted of Worthen, C.J., Hoyle, J. and J., Neeley*