PD-0245-15
COURT OF CRIMINAL APPEALS
AUSTIN, TEXAS
Transmitted 3/12/2015 12:30:09 PM
Accepted 3/13/2015 9:39:39 AM
ABEL ACOSTA
CLERK

## IN THE COURT OF CRIMINAL APPEALS OF TEXAS

| | | |
|---|---|---|
| **JUAN BLEA,** | § | |
| APPELLEE | § | |
| | § | |
| v. | § | No. _____ |
| | § | |
| **THE STATE OF TEXAS,** | § | |
| APPELLANT | § | |

---

### STATE'S PETITION FOR DISCRETIONARY REVIEW

---

FROM THE SECOND DISTRICT OF TEXAS AT FORT WORTH
IN CAUSE NUMBER 02-13-00221-CR
AND
FROM THE 362ND JUDICIAL DISTRICT COURT,
THE HONORABLE BRUCE MCFARLING, JUDGE, PRESIDING;
THE HONORABLE SHERRY SHIPMAN FROM THE 16TH JUDICIAL
DISTRICT COURT, AS SITTING JUDGE
DENTON COUNTY, TEXAS

**PAUL JOHNSON**
Criminal District Attorney
Denton County, Texas

**CATHERINE LUFT**
Assistant Criminal District Attorney
Chief, Appellate Division

FILED IN
COURT OF CRIMINAL APPEALS

March 13, 2015

ABEL ACOSTA, CLERK

**ANDREA R. SIMMONS**
Assistant Criminal District Attorney
State Bar No. 24053478
1450 East McKinney
Denton, Texas 76209
(940) 349-2600
FAX (940) 349-2751
andrea.simmons@dentoncounty.com

## IDENTITY OF PARTIES AND COUNSEL

Appellee .......................................................**JUAN BLEA**

> **DAWN MOORE**
> 1504 East McKinney Street
> Suite 200
> Denton, Texas 76209
>
> APPELLATE COUNSEL
>
> **DENVER McCARTY**
> 1512 East McKinney Street
> Suite 200
> Denton, Texas 76209
>
> TRIAL COUNSEL

Appellant .......................................................**THE STATE OF TEXAS**

> **PAUL JOHNSON**
> Criminal District Attorney
>
> **CATHERINE LUFT**
> Assistant Criminal District Attorney
> Chief, Appellate Division
>
> **ANDREA R. SIMMONS**
> Assistant Criminal District Attorney
> State Bar No. 24053478
> 1450 East McKinney
> Denton, Texas 76209
> (940) 349-2600
> FAX (940) 349-2751
>
> APPELLATE COUNSEL
>
> **MICHAEL GRAVES**
> **DUSTIN GOSSAGE**
> Assistant Criminal District Attorneys
>
> TRIAL COUNSEL

# TABLE OF CONTENTS

IDENTITY OF PARTIES AND COUNSEL ........................................................ii-iv

INDEX OF AUTHORITIES.................................................................. v-vi

STATEMENT REGARDING ORAL ARGUMENT............................................. 1-2

STATEMENT OF THE CASE................................................................ 1

STATEMENT OF PROCEDURAL HISTORY....................................................... 2

GROUND FOR REVIEW ................................................................... 2

ARGUMENTS ....................................................................................

    Applied properly, the settled principles of an evidentiary sufficiency
    analysis prevent the appellate courts from becoming a thirteenth juror..........3

    Bodily injury versus *serious* bodily injury .......................................................4

    The majority opinion was wrong as the jury could have reasonably
    inferred that absent medical treatment, the injury to the complainant's
    lungs and liver could have resulted in a substantial risk of death.
    Furthermore, the evidence was sufficient to support seriously bodily
    injury where the complainant suffered from a protracted impairment
    of the functioning of her body as a result of the assault................................4

PRAYER FOR RELIEF......................................................................... 9

CERTIFICATE OF COMPLIANCE ................................................................ 10

CERTIFICATE OF SERVICE ................................................................ 10

APPENDICES:

A    *Blea v. State,* No. 02-13-00221-CR, 2015 Tex. App. LEXIS 1137
     (Tex. App. —Fort Worth Feb. 5, 2015, pet. filed)

# INDEX OF AUTHORITIES

**Statutes, Rules and Codes**      **Page**

Tex. Penal Code Ann. § 1.07(a)(8) (Vernon 2013) ....................................................... 4

Tex. Penal Code Ann. §1.07(a)(46) (Vernon 2013) ................................................. 4-5

**Cases**

*Barrera v. State*
820 S.W.2d 194 (Tex. App.—Corpus Christi 1991, pet. ref'd)............................ 7

*Blea v. State*
No. 02-13-00221-CR, 2015 Tex. App. LEXIS 1137 (Tex. App. —
Fort Worth Feb. 5, 2015, pet. filed) .................................................................. 2, 8

*Brown v. State*
605 S.W.2d 572 (Tex. Crim. App. [Panel Op.] 1980) ............................................ 7

*Dewberry v. State*
4 S.W.3d 735 (Tex. Crim. App. 1999)................................................................. 3

*Dobbs v. State*
434 S.W.3d 166 (Tex. Crim. App. 2014)................................................................ 8

*Hernandez v. State*
161 S.W.3d 491 (Tex. Crim. App. 2005)............................................................. 8-9

*Hooper v. State*
214 S.W.3d 9 (Tex. Crim. App. 2007)................................................................ 3

*Jackson v. State*
399 S.W.3d 285 (Tex. App. – Waco 2013, no pet.) (mem. op.))............................ 7

*Jackson v. Virginia*
　443 U.S. 307, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979) ........................................ 3

*Laster v. State*
　275 S.W.3d 512 (Tex. Crim. App. 2009) ............................................................... 3

*Moore v. State*
　739 S.W.2d 347 (Tex. Crim. App. 1987) .......................................................... 4, 7

*Nash v. State*
　123 S.W.3d 534 (Tex. App.—Fort Worth 2003, pet. ref'd) ................................. 4

*Patterson v. State*
　No. 11-06-00209-CR, 2008 Tex. App. LEXIS 1525 (Tex. App.—
　Eastland 2008, pet. ref'd) (not designated for publication) ................................ 7

*Thomas v. State*
　444 S.W.3d 4 (Tex. Crim. App. 2014) ................................................................. 8

*Whatley v. State*
　445 S.W.3d 159 (Tex. Crim. App. 2014) ............................................................. 8

*Wilson v. State*
　139 S.W.3d 104 (Tex. App.—Texarkana 2004, pet. ref'd) ................................. 7

*Winfrey v. State*
　323 S.W.3d 875 (Tex. Crim. App. 2010) ............................................................. 8

## IN THE COURT OF CRIMINAL APPEALS OF TEXAS

| | | |
|---|---|---|
| **JUAN BLEA** | § | |
| APPELLANT | § | |
| | § | |
| v. | § | No. _____ |
| | § | |
| **THE STATE OF TEXAS,** | § | |
| APPELLEE | § | |

---

## STATE'S PETITION FOR DISCRETIONARY REVIEW

---

TO THE HONORABLE COURT OF CRIMINAL APPEALS:

Comes now the State, by and through its Assistant District Attorney, and respectfully urges this Court to grant discretionary review of the above-named cause.

## STATEMENT REGARDING ORAL ARGUMENT

Because the issues presented to this Honorable Court for review are narrow in scope, the State does not believe that oral argument will be helpful to the Court in determining whether the Court of Appeals erred.

## STATEMENT OF THE CASE

Appellant was charged with, and found guilty of, the first-degree felony offense of aggravated assault, family violence, and sentenced to five years imprisonment. The majority opinion released by the Second Court of Appeals held that the evidence supporting "serious" bodily injury was insufficient, and reversed

1

and remanded the case to the trial court. The majority opinion ordered the trial court to (1) modify its judgment to delete the first-degree felony conviction of aggravated assault of a family member and to instead reflect a second-degree felony conviction for aggravated assault of a family member through the use of a deadly weapon and (2) conduct a new trial on punishment. Justice Livingston filed a dissenting opinion.

## STATEMENT OF PROCEDURAL HISTORY

After a jury found appellee guilty of the first-degree felony offense of aggravated assault against a family member, the Second Court of Appeals reversed and remanded the trial court's judgment of conviction, specifically finding the evidence insufficient to support "serious" bodily injury (Appendix A [*Blea v. State,* No. 02-13-00221-CR, 2015 Tex. App. LEXIS 1137 (Tex. App. – Fort Worth Feb. 5, 2015, pet. filed)]).

## GROUND FOR REVIEW

Did the Second Court of Appeals improperly apply the standard for reviewing the sufficiency of the evidence in analyzing whether the complainant suffered serious bodily injury?

2

## ARGUMENTS

**Applied properly, the settled principles of an evidentiary sufficiency analysis prevent the appellate courts from becoming a thirteenth juror.**

In assessing the legal sufficiency of the evidence under *Jackson v. Virginia*, a reviewing court "consider[s] all of the evidence in the light most favorable to the verdict and determine[s] whether, based on that evidence and reasonable inferences therefrom, a rational juror could have found the essential elements of the crime beyond a reasonable doubt." *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007 (*citing Jackson v. Virginia*, 443 U.S. 307, 318-19, 99 S. Ct. 2781, 2788-89, 61 L. Ed. 2d 560 (1979)). A reviewing court's role is not to become a thirteenth juror, and it should not reevaluate the weight and credibility of the record evidence and substitute its judgment for that of the fact-finder. *Dewberry v. State*, 4 S.W.3d 735, 740 (Tex. Crim. App. 1999). Instead, a reviewing court defers to "the responsibility of the trier of fact to fairly resolve conflicts in testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Hooper*, 214 S.W.3d at 13 (*quoting Jackson,* 443 U.S. at 318-19). This same standard applies equally to circumstantial and direct evidence. *Laster v. State*, 275 S.W.3d 512, 517-18 (Tex. Crim. App. 2009). A reviewing court's role on appeal is "restricted to guarding against the rare occurrence when a factfinder does not act rationally." *Id.* at 518.

**Bodily injury versus *serious* bodily injury.**

"Bodily injury" means physical pain, illness, or any impairment of physical condition. Tex. Penal Code Ann. § 1.07(a)(8) (Vernon 2013). "*Serious* bodily injury" means bodily injury that creates a substantial risk of death or that causes death, serious permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ. Tex. Penal Code Ann. § 1.07(a)(46) (Vernon 2013) (emphasis added). The Texas Legislature intended that there be a meaningful difference or distinction between the different definitions for "bodily injury" and "serious bodily injury," because the Penal Code provides definitions for each. *See Nash v. State*, 123 S.W.3d 534, 538-39 (Tex. App.—Fort Worth 2003, pet. ref'd) (*citing Moore v. State,* 739 S.W.2d 347, 349 (Tex. Crim. App. 1987).

**The majority opinion was wrong as the jury could have reasonably inferred that absent medical treatment, the injury to the complainant's lungs and liver could have resulted in a substantial risk of death. Furthermore, the evidence was sufficient to support seriously bodily injury where the complainant suffered from a protracted impairment of the functioning of her body as a result of the assault.**

Here, viewing the evidence in the light most favorable to the verdict and allowing the jury to draw reasonable inferences, the facts relating to the injury to the complainant's lungs were sufficient for the jury to find that without treatment the complainant faced a substantial risk of death based upon her injuries to the lung and/or liver. *See* Tex. Penal Code Ann. §1.07(a)(46). Furthermore, the evidence

4

was sufficient to show that the complainant sustained a serious bodily injury based upon the suffering from a protracted impairment of the functioning of her body. *See Id.* Specifically, appellee hit the complainant in the face, hit and kicked her in the side and ribs, and said he was going to kill her (2 R.R. at 30, 32-33, 50). According to the complainant's written statement, taken after the assault by appellee but prior to being transported to the hospital, she was in "a ton of pain" after the assault (2 R.R. at 36). The complainant said that she had pain in her chest and back and that it felt like something was broken or terribly injured (2 R.R. at 37). When the ambulance arrived, she could not breathe very well (2 R.R. at 33, 36-37, 39, 43).

Tim Adamo, the responding officer from the Carrollton Police Department, testified that the complainant was having a hard time breathing when he arrived (2 R.R. at 118, 126). Officer Adamo also testified that the complainant was in quite a bit of pain when and was holding her ribs, chest, and stomach area while seated on the couch (2 R.R. at 115, 117-18). Appellee's father testified that the complainant looked pretty bad and could not walk (2 R.R. at 84-85).

Kristie Brown, nurse practitioner at Parkland Memorial Hospital, testified that the complainant suffered injuries to her liver and chest (2 R.R. at 61-62). The complainant also had bruising to the left side of her face and abdomen, two fractured ribs, and fractures to the maxillary sinuses (2 R.R. at 63-65). Her lung

5

collapsed (this is called a pneumothorax), and when Nurse Brown met the complainant, a procedure had already been done to help with her breathing (2 R.R. at 64-65, 67). The complainant's mother clarified that the complainant had a chest tube inserted to assist with her breathing but that it was removed before she was discharged from the hospital (2 R.R. at 97, 104-05, 107-08, 110). Nurse Brown testified that injuries to the lungs are treated seriously and that a person could die from lack of oxygen (2 R.R. at 66-67). She elaborated by saying that:

> "if you have a box and a balloon blown up inside the box and the balloon shrinks over time, there is air between the box and the balloon, that is a pneumothorax. Most of the time, the lungs should be expanded in our chest and touching the sides of the box, but when the lung collapses, it's just like a balloon that has a small leak in it and collapses down. When that occurs, the patient, Justina, can have trouble breathing and it can affect blood pressure, vital signs that we look at" (2 R.R. at 64-65).

Nurse Brown further testified that injuries to the liver are also treated seriously (2 R.R. at 66-67). And although the complainant's liver was always functioning, a patient could bleed to death quickly due to such an injury (2 R.R. at 65-66, 68-69). In fact, the complainant was originally not allowed to walk because she could start bleeding (2 R.R. at 68).

The complainant's mother testified that the complainant was in a lot of pain and had a lot of bruising (2 R.R. at 94-95). She was hospitalized for four days, but after she was released, she was still in a lot of pain and couldn't walk (2 R.R. at 108-09). When the complainant was able to walk again, she was still in pain ( R.R.

6

at 109-10). Her job duties changed when she returned to work because she could not lift over twenty-five pounds for at least one month after the assault per doctor's orders. And the complainant did not work for approximately one month after the assault (2 R.R. at 109-10).

Whether or not an injury constitutes serious bodily injury must be determined on a case-by-case basis. *Moore,* 739 S.W.2d at 352. The relevant inquiry as to this issue is the extent of the injuries as inflicted, not after the effects have been ameliorated by medical treatment. *See Jackson v. State,* 399 S.W.3d 285, 291 (Tex. App. – Waco 2013, no pet.) (mem. op.)); *Wilson v. State,* 139 S.W.3d 104, 106 (Tex. App.—Texarkana 2004, pet. ref'd) (*citing Brown v. State,* 605 S.W.2d 572, 575 (Tex. Crim. App. [Panel Op.] 1980)); *Barrera v. State,* 820 S.W.2d 194, 196 (Tex. App.—Corpus Christi 1991, pet. ref'd); *see also Patterson v. State,* No. 11-06-00209-CR, 2008 Tex. App. LEXIS 1525, at *8 (Tex. App.— Eastland 2008, pet. ref'd) (not designated for publication) (testimony by emergency room physician sufficient to show that pneumothorax, common with broken ribs, created a substantial risk of death).

Moreover, the Second Court of Appeals improperly resolved conflicts in witnesses' testimony against the jury's verdict. For example, the majority opinion noted contradicting testimony as to the changes in duties at the complainant's job and whether those changes were related to her injuries, and inconsistent testimony

7

by the complainant's mother as to how long it took before the complainant could walk; the majority found a lack of evidence as to the complainant being unable to control her oxygenation, and pointed out that although the complainant testified that she suffered a lacerated liver, no other evidence of such was presented (although there was evidence which allowed an inference of such) (Appendix A [*Blea v. State,* No. 02-13-00221-CR, 2015 Tex. App. LEXIS 1137 at * 8-12 (Tex. App. – Fort Worth Feb. 5, 2015, pet. filed)]).

A jury's verdict in evidentiary sufficiency issues are weighed in favor of affirming a judgment of conviction. *See Winfrey v. State,* 323 S.W.3d 875, 879 (Tex. Crim. App. 2010). Settled principles aimed at preventing appellate courts from becoming a thirteenth juror include: considering the evidence, along with reasonable inferences from the evidence, in the light most favorable to the verdict; deferring to the factfinder's exclusive role to resolve conflicts in the evidence, and to judge the credibility of the witnesses; assessing incriminating evidence cumulatively rather than requiring each fact to directly support guilt; allowing for circumstantial evidence alone to support a conviction; and recognizing that a factfinder is free to accept or reject any or all of the testimony of any witness (*see* Appendix A, Livingston's Dissent, citing *Whatley v. State,* 445 S.W.3d 159, 166 (Tex. Crim. App. 2014); *Thomas v. State,* 444 S.W.3d 4, 8 (Tex. Crim. App. 2014); *Dobbs v. State,* 434 S.W.3d 166, 170 (Tex. Crim. App. 2014); *Hernandez v. State,*

8

161 S.W.3d 491, 500-01 (Tex. Crim. App. 2005)). Here, the majority improperly acted as a thirteenth juror.

## PRAYER FOR RELIEF

For the reasons stated herein, the State prays this Court will grant review in this case in order to permit full briefing on the Court of Appeals' erroneous application of the standard of review.

Respectfully submitted,

**PAUL JOHNSON**
Criminal District Attorney
Denton County, Texas

**CATHERINE LUFT**
Assistant Criminal District Attorney
Chief, Appellate Division

**ANDREA R. SIMMONS**
Assistant Criminal District Attorney
State Bar No. 24053478
1450 East McKinney
Denton, Texas 76209
(940) 349-2600
FAX (940) 349-2751

9

## CERTIFICATE OF COMPLIANCE

The State certifies that the State's Petition for Discretionary Review in the instant cause contains a word count of 1916, said count being generated by the computer program Microsoft Word that was used to prepare the document.

**ANDREA R. SIMMONS**

## CERTIFICATE OF SERVICE

A true copy of the State's Petition for Discretionary Review has been sent by United States Mail, postage prepaid, to counsel for Appellee, Dawn A. Moore, BOSWELL & MOORE, 1504 East McKinney Street, Suite 200, Denton, Texas 76209, on this, the 12th day of March 2015.

**ANDREA R. SIMMONS**

# APPENDIX A

[*Blea v. State,* No. 02-13-00221-CR, 2015 Tex. App. LEXIS 1137 (Tex. App. —Fort Worth Feb. 5, 2015, pet. filed) ]


LexisNexis®

## JUAN BLEA, APPELLANT v. THE STATE OF TEXAS, STATE

### NO. 02-13-00221-CR

### COURT OF APPEALS OF TEXAS, SECOND DISTRICT, FORT WORTH

### 2015 Tex. App. LEXIS 1137

**February 5, 2015, Delivered**
**February 5, 2015, Opinion Filed**

**NOTICE:** PLEASE CONSULT THE TEXAS RULES OF APPELLATE PROCEDURE FOR CITATION OF UNPUBLISHED OPINIONS.

**PRIOR HISTORY:** [*1] FROM THE 362ND DISTRICT COURT OF DENTON COUNTY. TRIAL COURT NO. F-2011-0993-D. TRIAL COURT JUDGE: HON. SHERRY SHIPMAN.

**COUNSEL:** FOR APPELLANT: DAWN A. MOORE, BOSWELL & MOORE, P.C., DENTON, TEXAS.

FOR STATE: PAUL JOHNSON, CRIMINAL DISTRICT ATTORNEY; CATHERINE LUFT, CHIEF OF THE APPELLATE SECTION; ANDREA R. SIMMONS, MICHAEL GRAVES, DUSTIN GOSSAGE, ASSISTANT CRIMINAL DISTRICT ATTORNEYS FOR DENTON COUNTY, DENTON, TEXAS.

**JUDGES:** PANEL: LIVINGSTON, C.J.; DAUPHINOT and GABRIEL, JJ. TERRIE LIVINGSTON, CHIEF JUSTICE.

**OPINION BY:** LEE ANN DAUPHINOT

**OPINION**

**MEMORANDUM OPINION[1]**

1  *See Tex. R. App. P. 47.4.*

A jury convicted Appellant Juan Blea of first-degree felony aggravated assault of a family member.[2] The jury assessed his punishment at five years' confinement, and the trial court sentenced him accordingly. That offense

requires both serious bodily injury and the use of a deadly weapon.[3] In this case, the indictment alleged that Appellant's hand was a deadly weapon. Appellant brings a single issue on appeal, challenging the sufficiency of the evidence that he caused the complainant serious bodily injury rather than bodily injury as well as the sufficiency of the evidence that he used his hand as a deadly weapon. Because the evidence is insufficient to show that [*2] Appellant caused serious bodily injury but sufficient to show that he used his hand as a deadly weapon, we reverse the trial court's judgment and remand this case to the trial court with instructions (1) to modify the judgment to delete the conviction for first-degree felony aggravated assault of a family member and to instead reflect a conviction for second-degree felony aggravated assault of a family member, based on Appellant's use of a deadly weapon, and (2) to conduct a new trial on punishment for the second-degree felony.[4]

2  *See Tex. Penal Code Ann. § 22.02(b)(1)* (West 2011).
3  *Id.*
4  *See id. § 22.02(a)(2)-(b).*

**Brief Summary of the Facts**

On the date of the offense, July 21, 2010, the complainant and Appellant had a small daughter and shared a bedroom in his parents' apartment. While Appellant and complainant were not married, they did marry about two years later.

A couple of weeks before the assault, Appellant had separated from the complainant and moved in with a friend. On July 20, the complainant spent time with a male friend from school. At trial, she did not remember

whether she returned home late that night or the next morning. Appellant visited the apartment that the complainant shared with his parents between 10:00 a.m. and noon on [*3] July 21 and was in a good mood. But he saw a hickey on the complainant's neck, and when she refused to tell him "where it was from," he became angry. When she finally told him "who [the hickey] was from," he hit her in the face with his hand. They were in the kitchen. At trial, she did not remember whether his hand was open or in a fist. In her testimony, the complainant denied falling, but in her written statement, she had said that she had fallen. She admitted in her testimony that in her written statement, she had said that Appellant had told her that he was going to kill her.

The complainant testified that Appellant hit her only once. When the prosecutor suggested that Appellant had continued to hit her and had asked where their daughter was, the complainant corrected him, stating, "[A]fter he first hit me, she started getting fussy. I told him to leave me alone and I wanted to put her asleep (sic) because I didn't want her around all this and us fighting."

After the complainant gave their daughter a bottle and put her to bed in the bedroom, the couple began fighting again in the living room. Appellant hit her in the side. She testified that he hit her more than once and used both his fist [*4] and his open hand. She said that he might have kicked her with his foot and also testified that she had been in a lot of pain after the assault. The prosecutor reminded her that in her written statement, she had said that she was in a "ton" of pain. The pain was in her back and her chest. The prosecutor asked, "Did you feel like something had been broken or terribly injured as a result of this?" The complainant responded, "Yes."

The child woke up, so Appellant stopped hitting the complainant, and she told him that either he or she needed to go buy diapers. Appellant left the apartment and returned with the diapers. The complainant did not call the police while he was gone. When the prosecutor asked her why, she responded, "Because I didn't want to." She said that she had been scared and had not known how Appellant would act, and she had not wanted anyone to know what had happened. When Appellant returned, he and the complainant argued verbally. The prosecutor asked her whether it was evident that she was in pain. She testified that the pain had not set in yet and that she did not tell Appellant that she was in pain.

After Appellant left, the complainant lay down with their daughter, [*5] took a bath, cleaned up, and then called Appellant's parents and asked them to come home from work, stating that she had fallen down the stairs. After Appellant's parents saw her, his father called the police.

Officer Tim Adamo, who had been a police officer for twenty-three years by the time of trial, called for an ambulance after he arrived at the apartment. He described the complainant's injuries:

> The first time I contacted her, she had visible injuries. I could see scrapes, lacerations on her face. She had her--under her left eye was bruised and had a cut on it. I saw a mark on her arm, as well, like a redness and early set of bruising.
>
> . . . .
>
> She was on the couch in the front room.
>
> . . . .
>
> . . . [. S]he was in quite a bit of pain. She was, like, with one arm holding her ribs, her chest, her stomach area.
>
> . . . .
>
> . . . . She said she had a hard time breathing, had a lot of pain.
>
> . . . .
>
> . . . . I was trying to get a statement from her, an affidavit, but she had a lot of difficulty writing the statement.
>
> She tried to get up from the couch at one point and she fell back to the couch in pain and that's when I called for a medic.

## Sufficiency of the Evidence

Appellant contends that the evidence [*6] is insufficient to show that (1) he caused serious bodily injury and (2) his hand was used as a deadly weapon. In our due-process review of the sufficiency of the evidence to support a conviction, we view all of the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.[5] *Section 22.02 of the penal code* provides,

> (a) A person commits an offense if the person commits assault as defined in § 22.01 and the person:
>
> (1) causes serious bodily injury to another, including the person's spouse; or

(2) uses or exhibits a deadly weapon during the commission of the assault.

(b) An offense under this section is a felony of the second degree, except that the offense is a felony of the first degree if:

(1) the actor uses a deadly weapon during the commission of the assault and causes serious bodily injury to a person whose relationship to or association with the defendant is described by *Section 71.0021(b)*, *71.003*, or *71.005*, Family Code[.][6]

*Section 22.01* provides,

(a) A person commits an offense if the person:

(1) intentionally, knowingly, or recklessly causes bodily injury to another . . . ;

. . . .

(b) An offense under Subsection (a)(1) is a Class A misdemeanor . [*7] . . [7]

---

5    *Jackson v. Virginia, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789, 61 L. Ed. 2d 560 (1979)*; *Winfrey v. State, 393 S.W.3d 763, 768 (Tex. Crim. App. 2013)*.

6    *Tex. Penal Code Ann. § 22.02(a)-(b)*.

7    *Id. § 22.01* (West Supp. 2014).

"Bodily injury" is defined as "physical pain, illness or any impairment of physical condition."[8] "Serious bodily injury" is defined as "bodily injury that creates a substantial risk of death or that causes death, serious permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ."[9] The Texas Court of Criminal Appeals has explained that

[b]y virtue of the fact that the Penal Code provides a different definition for "bodily injury" from "serious bodily injury", though often a matter of degree, we must presume that the Legislature intended that there be a meaningful difference or distinction between "bodily injury" and "serious bodily injury." Understandably, this means that where the issue is raised, the issue must be determined on an ad hoc basis.[10]

And our sister court in El Paso has explained that

bodily injury cannot be elevated to serious bodily injury by postulating potential complications which are not in evidence. The [S]tate must present evidence that the [complainant] suffered bodily injury that created a substantial risk of death. In other words, the [S]tate must present relevant and probative evidence from which the trier [*8] of fact could infer beyond a reasonable doubt that the injury itself created an appreciable risk of death.[11]

---

8    *Id. § 1.07(a)(8)*.

9    *Id. § 1.07(a)(46)*.

10   *Moore v. State, 739 S.W.2d 347, 349 (Tex. Crim. App. 1987)*.

11   *Hernandez v. State, 946 S.W.2d 108, 112 (Tex. App.--El Paso 1997, no pet.)* (citations and internal quotation marks omitted).

The complainant's mother, Jennifer, saw her in the hospital. Jennifer testified that she noticed only the bruising and redness of her daughter's right eye. At trial, Jennifer did not remember whether her daughter had had any trouble breathing. Jennifer did take photographs of the complainant over a period of time, and the photographs revealed developing bruising over her face and body. Although Jennifer testified on direct examination that the complainant was unable to walk in the hospital and for a month afterward, on cross-examination, she admitted that the complainant could stand and walk even while still in the hospital.

The complainant did not work at her waitressing job for a month after the assault. When she returned, she switched from waitressing to acting as hostess. Jennifer testified that the job change occurred because the doctor had told the complainant not to lift more than twenty-five pounds. The complainant, however, testified,

Q Did you resume your duties as a waitress?

A I decided to be a host.

Q Why is [*9] that?

A Just so I didn't have to deal with a lot of people. I didn't want to go back to doing waitressing just yet.

Q Because you didn't want to interact with people?

A That, and everybody at Champps kind of knew what happened, kind of the regulars. That was just kind of my way of avoiding everybody.

She also testified,

Q You don't really want to be here, do you?

A No.

Q Now, when you were taken to the hospital, were you ever in the ICU, or do you know?

A Not that I know of.

Q Just in a regular room?

A Yes.

Q Do you have any serious permanent disfigurement as a result of this incident?

A No.

Q As a result of this incident, did you have a protracted loss of the use of any bodily member or organ?

A No.

Q Have you fully recovered?

A Yes.

Q Were you able to get up and be out and about some the week after that?

A The week after the hospital?

Q Yeah, after they let you go home.

A Yeah.

Q Okay. I mean, you could get up and go do something, right?

A Yeah, yeah.

In response to the prosecutor's asking her the meaning of "protracted loss or impairment of the function of any bodily member or organ," the complainant said that she did not know a specific definition, but that she "probably would know that" and "if [she] [*10] did have that, wouldn't a doctor tell [her]?"

The trial court admitted State's Exhibits 18 and 19, hospital records, but after reconsideration, withdrew the exhibits. The court reporter erroneously included those two exhibits in the record, but both the State and Appellant conscientiously asked this court not to consider those exhibits because they were never before the jury. We granted their request and have not considered those exhibits.

The complainant's injuries included two fractured ribs and a fractured maxillary sinus bone. She was kept in the hospital for four days and then "medically cleared for discharge." Kristie Brown, a nurse practitioner at Parkland Hospital, testified concerning the complainant's medical treatment. Brown testified that the complainant had a collapsed lung, but it had already been treated when Brown met the complainant the morning after her admission to the hospital. Brown explained that a person with a collapsed lung "can have trouble breathing, and it can affect blood pressure, vital signs that [medical professionals] look at." Although the complainant had testified that "they said my liver was lacerated, or something," no other evidence of a lacerated [*11] liver was presented to the jury. Brown did testify that there was an injury to the complainant's liver and an injury in her chest. Brown admitted that she was repeating the radiologist's opinion, and the trial court sustained Appellant's objection to her testifying about anything somebody else did. But the trial court did not instruct the jury to disregard. Brown testified that she checked for peritonitis or other problems caused by a liver injury; none was discovered. There was no evidence that any injury to the complainant's liver was a serious bodily injury.[12] The following exchange occurred:

Q So at all times, her liver was functioning and doing what it was supposed to be doing?

A Yes, sir.

Q And--all right. Same with her lungs? I mean, she could breathe, right?

A Yes, sir, she was breathing.

Q And I assume you tested her blood for oxygen level?

A Yes, sir.

Q And I guess her blood was--her lungs were working like they were supposed to?

A Yes, sir.

Q I mean, they were providing enough oxygen to her?

A Yes, sir.

Q Now, on the broken ribs, what treatment was given to her for the broken ribs?

A Pain medication and respiratory, what we call incentive spirometry, just deep-breathing exercises, and pain [*12] medication.

Q When we hear broken ribs, we think of something sticking through the skin, something like that.

The rib was, I guess, still intact, for want of better words, but there was a fracture in it?

A There was a fracture in it. What alignment it had, I would have to review the chest x-ray. I don't remember.

Q In any event, there was nothing done to tape her up or set any fractures or have any surgery regarding the ribs?

A That is correct.

Q Okay. And would the same be true of the maxillary sinus?

A That's correct. Due to the swelling, they saw her--we recommended that she be seen in clinic after she was discharged home from the hospital.

Q But no surgery or any procedures were done to repair that damage?

A That's correct.

Q It just healed on its own?

A That is correct.

12      *See id. at 111-13* (holding that a 1-centimeter laceration of the liver was unlikely to cause death and not serious bodily injury).

The only evidence that the complainant could have suffered serious bodily injury arose from the State's inquiry whether "any injury to the liver [is] treated seriously or minimally" by Brown's "profession." She replied that they are treated seriously because

[i]njuries to the liver can cause a patient to bleed to death [*13] very quickly. Knowing that there is an injury to the liver and why it is and whether it is actively bleeding or has developed a blood clot to the liver makes a decision point for what the surgeons do and what we do for the patient.

But there was no evidence that the complainant suffered from such a condition.

The prosecutor then asked whether "lungs [are] treated seriously or minorly." Brown replied, "Seriously." When asked to explain why lungs are treated seriously, she replied, "Because if we can't control our oxygenation, we need oxygen to live, and you can die from that." But Brown did not testify that the complainant suffered from such a condition. No one did. Indeed, Brown monitored the complainant to determine whether a substantial risk of death or any risk of death developed from any injury, and it did not.

Considering all the evidence, we hold that there is no evidence from any source that would allow a jury to conclude or infer beyond a reasonable doubt that the complainant's injuries created a substantial risk of death."

13      *See Tex. Penal Code Ann. § 1.07(a)(46).*

We must next consider whether the complainant suffered permanent disfigurement or protracted loss or impairment of the use of a bodily member or organ." [*14] She testified that she had suffered neither. The only suggestion of such loss or impairment is Jennifer's testimony that the doctors told the complainant not to lift more than twenty-five pounds. Jennifer did not say how long the limitation was to last but said that it was because of the complainant's ribs. Jennifer also agreed that "we don't know whether or not [the complainant] was physically capable [of lifting], but she followed their advice."

14      *See id.*

The complainant testified that she was fully recovered. She also testified that she was able to go out and about some as soon as she was released from the hospital.

The *Moore* court instructs us that

given the common meaning of the word "protracted," the complainant's mother's testimony, on which the State relies, that the complainant was bedridden and that it was at least a week "before he

could really go out and see people," does not even come close to establishing that the injury the complainant sustained to his back was either continuing, dragged out, drawn out, elongated, extended, lengthened, lengthy, lingering, long, long-continued, long-drawn, never-ending, ongoing, prolix, prolonged, or unending.[15]

15  *739 S.W.2d at 352.*

We have carefully examined the [*15] record. There is no evidence that the complainant suffered serious permanent disfigurement or protracted loss or impairment of the function of any bodily member or organ.[16] We therefore hold that the evidence is insufficient to support the element of serious bodily injury.

16  *See Tex. Penal Code Ann. § 1.07(a)(46).*

But the evidence is sufficient to support the deadly weapon finding. Testimony touching on whether Appellant's hand was a deadly weapon in the manner of its use or intended use included that of the complainant and that of Officer Adamo, the responding police officer. The complainant testified that after Appellant struck her with his hand, knocking her down, he said that he was going to kill her. Officer Adamo testified on direct examination by the prosecutor,

> Q [C]an a person's hand be a deadly weapon?
>
> A Yes, it can.
>
> . . . .
>
> Q [D]o you feel that someone's hands are capable of causing death or serious bodily injury?
>
> . . . .
>
> A Yes, they are very capable.

Appellant's statement to the complainant that he was going to kill her was some evidence of his intent to use his hand as a deadly weapon. Officer Adamo's testimony was evidence that would allow a rational trier of fact to conclude beyond a reasonable doubt that, in the manner of [*16] its intended use, Appellant's hand was capable of causing death or serious bodily injury. Accordingly, we hold that the evidence is sufficient to support the jury

finding that Appellant's hand was a deadly weapon in the manner of its intended use but that the evidence is insufficient to support the serious bodily injury finding. We therefore sustain in part and overrule in part Appellant's sole issue on appeal.

### Conclusion

Because the State proved only second-degree aggravated assault of a family member beyond a reasonable doubt, that is, it proved that Appellant committed an assault against the complainant and used a deadly weapon during its commission, we reverse the trial court's judgment in part. We remand this case to the trial court with instructions to (1) modify its judgment to delete the first-degree felony conviction of aggravated assault of a family member and to instead reflect a second-degree felony conviction for aggravated assault of a family member through the use of a deadly weapon and (2) conduct a new trial on punishment.[17]

17  *See Bowen v. State, 374 S.W.3d 427, 432 (Tex. Crim. App. 2012).*

/s/ Lee Ann Dauphinot

LEE ANN DAUPHINOT

JUSTICE

PANEL: LIVINGSTON, C.J.; DAUPHINOT and GABRIEL, JJ.

LIVINGSTON, C.J., filed a dissenting opinion.

[*17] DO NOT PUBLISH
*Tex. R. App. P. 47.2(b)*

DELIVERED: February 5, 2015

**DISSENT BY: TERRIE LIVINGSTON**

**DISSENT**

**DISSENTING MEMORANDUM OPINION[1]**

1  *See Tex. R. App. P. 47.4, 47.5.*

Because the majority's opinion improperly applies standards for reviewing the sufficiency of evidence to show that the victim suffered serious bodily injury, I dissent from the decision to reverse the trial court's judgment and to remand for the entry of a judgment that reflects only a second-degree felony conviction.[2]

2  *See Tex. Penal Code Ann. § 22.02(b)(1) (West 2011).*

When deciding an evidentiary sufficiency issue in a criminal appeal, our usual deference to a jury's verdict

requires us to weight appellate scales in favor of affirming a judgment of conviction. *See Winfrey v. State, 323 S.W.3d 875, 879 (Tex. Crim. App. 2010)*. We do so by applying settled principles aimed at preventing us from becoming a "thirteenth juror." *See Thornton v. State, 425 S.W.3d 289, 303 (Tex. Crim. App. 2014); Isassi v. State, 330 S.W.3d 633, 638 (Tex. Crim. App. 2010)* (explaining that in reviewing the sufficiency of evidence to support a conviction, we guard "against the rare occurrence when a factfinder does not act rationally"). Those principles include considering the evidence, along with reasonable inferences from the evidence, in the light most favorable to the verdict; deferring to the factfinder's exclusive role to resolve conflicts in the evidence (and inferences therefrom)[3] [*18] assessing incriminating evidence cumulatively rather than requiring each fact to directly support guilt; allowing for circumstantial evidence alone to support a conviction; and recognizing that a factfinder is free to accept or reject any or all of the testimony of any witness. *Whatley v. State, 445 S.W.3d 159, 166 (Tex. Crim. App. 2014); Thomas v. State, 444 S.W.3d 4, 8 (Tex. Crim. App. 2014); Dobbs v. State, 434 S.W.3d 166, 170 (Tex. Crim. App. 2014); Hernandez v. State, 161 S.W.3d 491, 500-01 (Tex. Crim. App. 2005)*.

> 3    The majority appears to resolve conflicts in witnesses' testimony against the jury's verdict. *See* Majority Op. at 8-10.

In showing fidelity to these principles in this appeal, we should determine that the evidence is sufficient to prove that the complainant suffered serious bodily injury, meaning bodily injury[4] that created "a substantial risk of death . . . or protracted loss or impairment of the function of any bodily member or organ." *Tex. Penal Code Ann. § 1.07(a)(46); see id. § 22.02(a)(1), (b)(1)*. The complainant testified that as a result of appellant's hitting her side repeatedly, she felt "a lot of pain" in her back and chest and could not breathe. She believed that she had been "terribly injured." Appellant's father noticed that the complainant had difficulty walking. Hospital personnel told her that she had a collapsed lung, among other injuries. The complainant stayed in a hospital several days, and a "month or so" passed before she was able to [*19] return to work.

> 4    "Bodily injury" includes pain or any impairment of physical condition. *Tex. Penal Code Ann. § 1.07(a)(8)* (West Supp. 2014).

Kristie Brown, a nurse practitioner, confirmed that the complainant had suffered a lung injury. Concerning that injury—a pneumothorax—Brown testified,

> if you have a box and a balloon blown up inside the box and the balloon shrinks over time, there is air between the box and the balloon, that is a pneumothorax. Most of the time, the lungs should be expanded in our chest and touching the sides of the box, but when the lung collapses, it's just like a balloon that has a small leak in it and collapses down.
>
> When that occurs, the patient, [the complainant], can have trouble breathing, and it can affect blood pressure, vital signs that we look at.

The complainant's mother testified that while in the hospital, the complainant was not able to move around the room, and treatment for her collapsed lung required the insertion of a chest tube. According to the complainant's mother, after the complainant left the hospital, she could not work or walk without pain for some time, and when she returned to work, she was instructed to not lift anything over twenty-five pounds.

While it is true that the [*20] complainant's condition improved upon medical treatment, in determining whether evidence is sufficient to establish serious bodily injury, the relevant issue is the impairing effect of the bodily injury as it was inflicted, not after the effects have been ameliorated by medical treatment. *Jackson v. State, 399 S.W.3d 285, 291 (Tex. App.--Waco 2013, no pet.)* (mem. op.); *see Webb v. State, 801 S.W.2d 529, 532 (Tex. Crim. App. 1990); Sizemore v. State, 387 S.W.3d 824, 828 (Tex. App.--Amarillo 2012, pet. ref'd)*. And serious bodily injury may be established without a physician's testimony when the injury and its effects are obvious. *Sizemore, 387 S.W.3d at 828*.

Brown testified that injuries to lungs are treated seriously because the lungs control oxygenation and affect blood pressure and "vital signs." Brown also explained that improper oxygenation can cause death. Thus, the jury could have reasonably inferred that if the complainant had not received the procedure that Brown described (presumably, the tube that the complainant's mother testified about) to help with her difficulty in breathing, the complainant faced a substantial risk of death. *See id.; see also Patterson v. State, No. 11-06-00209-CR, 2008 Tex. App. LEXIS 1525, 2008 WL 564880, at *3 (Tex. App.--Eastland Feb. 28, 2008, pet. ref'd)* (not designated for publication) (concluding that testimony that the victim had trouble breathing and received treatment for a pneumothorax that if left untreated, could cause death, was sufficient to prove that [*21] the victim had a serious bodily injury); *Pedro v. State, No. 01-88-00197-CR,*

*1988 Tex. App. LEXIS 3158, 1988 WL 139708, at *2 (Tex. App.--Houston [1st Dist.] Dec. 22, 1988, no pet.)* (not designated for publication) ("[T]he possibility that [a collapsed lung] could cause death, combined with the testimony that the complainant's lung was punctured, does support a finding that [a knife] was capable of causing 'serious bodily injury.'").

Viewing the evidence in the light most favorable to the verdict and allowing the jury to draw reasonable inferences from the evidence, I would hold that based at least on the facts concerning the injury to the complainant's lung, that this injury required treatment through a tube, and that injuries to lungs can be life-threatening, the evidence was sufficient for the jury to find that without treatment, the complainant faced a substantial risk of death. *See Tex. Penal Code Ann. § 1.07(a)(46).*

Moreover, I would also conclude that the evidence was sufficient to show that the complainant sustained a serious bodily injury because she suffered from a protracted impairment of the functioning of her body. *See id.* The complainant testified that the injuries she suffered as a result of the assault required her to miss a "month or so" of work. Her mother testified that during that time, the complainant "couldn't work" and just "[laid] around" [*22] because walking was painful. I would hold that these month-long effects from the assault qualify as a "protracted" impairment of the complainant's bodily functions. *See id.; Williams v. State, 575 S.W.2d 30, 33 (Tex. Crim. App. [Panel Op.] 1979)* (holding "that the

injury which caused [the victim] to lose lifting power in his arm for three months" constituted a protracted impairment of the function of a bodily member, so that "the wound would be classified as serious bodily injury"); *Madden v. State, 911 S.W.2d 236, 244-45 (Tex. App.--Waco 1995, pet. ref'd)* (concluding that there was serious bodily injury by protracted impairment of a bodily member when the victim was shot in the hip, hospitalized for a day and a half, could not walk for a month after the shooting, and had permanent scar tissue where the bullet entered and exited his body); *see also Tucker v. State, No. 05-01-01899-CR, 2002 Tex. App. LEXIS 7740, 2002 WL 32397713, at *1-2 (Tex. App.--Dallas Oct. 30, 2002, no pet.)* (not designated for publication) (holding that there was protracted impairment when the victim had a fractured jaw, was restricted to a liquid diet for three weeks, and had jaw pain for a month).

For all of these reasons, I respectfully dissent from the majority's opinion and judgment.

/s/ Terrie Livingston

TERRIE LIVINGSTON

CHIEF JUSTICE

DO NOT PUBLISH
*Tex. R. App. P. 47.2(b)*

DELIVERED: February 5, 2015