

# IN THE COURT OF CRIMINAL APPEALS
# OF TEXAS

## NO. PD-0157-20

## ROBERT ERIC WADE, III, Appellant

## v.

## THE STATE OF TEXAS

## ON STATE'S PETITION FOR DISCRETIONARY REVIEW
## FROM THE THIRD COURT OF APPEALS
## WILLIAMSON COUNTY

**NEWELL, J., delivered the opinion of the Court in which HERVEY, RICHARDSON, WALKER, and MCCLURE, JJ., joined. KELLER, P.J., filed a dissenting opinion in which YEARY, J., joined. SLAUGHTER, J., filed a dissenting opinion. KEEL, J., dissented.**

After biting off his ex-wife's new boyfriend's earlobe, Appellant was charged with aggravated assault by causing serious bodily injury. During his trial, Appellant testified that, in his opinion, biting off a portion of the victim's ear, the aforementioned earlobe, did not cause serious bodily injury to the victim because it did not result in "serious permanent disfigurement." Appellant requested a jury instruction on

the lesser-included offense of assault by causing bodily injury. The trial court denied Appellant's request, and the jury found Appellant guilty of aggravated assault causing serious bodily injury. The court of appeals held that there was legally sufficient evidence to establish that the victim had suffered serious bodily injury. However, the court of appeals also held that the trial court erred in denying Appellant's requested jury instruction because Appellant had presented more than a scintilla of evidence raising the lesser offense of assault.

We granted review to determine whether Appellant's testimony combined with other evidence introduced at trial could have provided the jury with a valid, rational alternative to the greater offense of aggravated assault. We hold that it could have. On the record presented in this case, there was more than a scintilla of evidence from which the jury could have rationally doubted that Appellant caused serious permanent disfigurement by biting off the victim's earlobe. Therefore, Appellant was entitled to his requested instruction on the lesser-included offense of assault.

## Background

As alluded to above, this case arises from a physical altercation between Appellant and Appellant's ex-wife's new boyfriend, Taylor Sughrue. In the early morning hours of July 17, 2016, Appellant went

to the home he had previously shared with his ex-wife.  Though the State and Appellant offered different versions of the sequence of events at trial and disputed whether Appellant or Sughrue was the primary aggressor, no one contests that a physical altercation between Appellant and Sughrue took place.  Both parties agree that Appellant bit Sughrue's ear during that physical altercation.  And both parties agree that as a result, Appellant severed Sughrue's earlobe from the rest of Sughrue's ear.  Appellant then left the residence.  Appellant's ex-wife called 911, and police and EMS responded to the scene.  After locating Sughrue's severed earlobe in the master bedroom, paramedics transported Sughrue and the earlobe by ambulance to St. David's Round Rock Medical Center.  The doctors were unable to save the earlobe.

The State charged Appellant with aggravated assault, alleging that Appellant caused Sughrue serious bodily injury by biting off a portion of Sughrue's ear, namely his earlobe.  The State further alleged that Appellant used or exhibited a deadly weapon, Appellant's teeth, during the commission of the offense.  At trial, the State sought to prove serious bodily injury by showing Sughrue suffered serious permanent disfigurement.

James Baker, the paramedic who responded to the residence and initially treated Sughrue, testified that Sughrue's primary injury was the

amputation of his left earlobe.  According to Baker, Sughrue was alert and able to communicate when EMS arrived.  While Baker testified that he saw "quite a bit of blood" at the scene, he also acknowledged that Sughrue's ear had almost stopped bleeding on its own by the time Baker arrived.  Baker also testified that Sughrue was able to stand and walk to the ambulance for further treatment, after which Baker and his partner transported Sughrue to the hospital without lights and sirens.  Baker explained to the jury that paramedics generally only transported a patient with lights and sirens when the patient's injuries were critical, or the patient was experiencing a life-threatening emergency.  The State did not ask for Baker's opinion regarding the severity of the injury to Sughrue's ear, but on cross-examination Baker agreed that the injury was not life-threatening.

Taylor Sughrue also testified for the State at trial.  During his testimony, the State introduced photographs of Sughrue's injury taken the day of the assault, photographs of Sughrue's injury with stitches, and photographs of Sughrue's scarred ear taken shortly before trial.



Sughrue also stepped in front of the jury during his testimony and afforded the jurors the opportunity to assess the severity of the injury themselves. When asked whether he considered himself permanently disfigured as a result of the assault, Sughrue testified that he did. However, Sughrue did not express any opinion as to whether he considered the disfigurement to be serious. Sughrue further testified that he was able to return to work the day after the assault and that he continued to work each day following the assault, though he worked less hours each day than he did before the assault.

The State also introduced Sughrue's medical records. The EMS records reflected that Sughrue sustained a "traumatic injury," that his left earlobe had been amputated, that he had pain in his left ear, and that there was "quite a bit of blood" at the scene. The hospital records described the injury as 10 cm long and a "large complex laceration to

the left ear externally with loss of the ear lobe." These records indicated that the injury extended into the cartilage and required 11 sutures.

But the hospital records also indicated that doctors determined Sughrue to be in a stable condition and discharged him from the hospital the same day as the assault. And while Sughrue received 11 stitches to close the wound on his ear, the only follow-up medical care was for the removal of the stitches. Sughrue also refused pain medications. The State introduced no other medical or expert testimony.

After the State rested, Appellant testified in his own defense. Appellant's primary defensive theory at trial was that he acted in self-defense after Sughrue attacked him, but Appellant also sought to undermine the conclusion that the injury in this case amounted to serious permanent disfigurement. On cross examination, Appellant agreed with the prosecutor that he used his teeth to bite Sughrue's earlobe, which caused the earlobe to be detached. Appellant also agreed that Sughrue's ear was disfigured as a result. But Appellant twice refused to agree with the prosecutor that he had caused "serious" bodily injury by biting off Sughrue's earlobe. He further stated that if he saw Sughrue on the street and did not know who Sughrue was, he would be unable to notice any difference between Sughrue's two ears.

At the charge conference, Appellant requested the jury be instructed on the lesser-included offense of assault.[1] The trial court denied the request and instructed the jury on only the greater offense of aggravated assault by causing serious bodily injury. After deliberations, the jury found Appellant guilty of aggravated assault as charged in the indictment.

The court of appeals held that the evidence was legally sufficient to support Appellant's conviction for aggravated assault because the jury could have made reasonable inferences from the evidence presented at trial to conclude that Sughrue suffered serious permanent disfigurement.[2] Appellant does not challenge this part of the court of appeals' opinion on discretionary review. Consequently, we accept the court of appeals' conclusion that the evidence was legally sufficient to establish that Appellant caused serious bodily injury. The issue of the sufficiency of the evidence to establish serious bodily injury is not before us.

The court of appeals also held that the trial court erred by denying the requested lesser-included instruction because Appellant's testimony

---

[1] Appellant also requested, and received, a self-defense instruction in the jury charge. Appellant does not complain of any error relating to the issue of self-defense on appeal.

[2] *Wade v. State*, 594 S.W.3d 804, 813 (Tex. App.—Austin 2020, pet. granted).

that Sughrue did not sustain a serious bodily injury provided more than a scintilla of evidence that raised the lesser offense of assault.[3]  After conducting a harm analysis, the court further determined that Appellant had suffered some harm from the error.[4]  Accordingly, the court of appeals reversed and remanded for a new trial.[5]

The State filed a petition for discretionary review, arguing that the court of appeals' analysis of the denial of the lesser-included offense instruction was incomplete.  According to the State, the court of appeals erred in focusing solely on whether a scintilla of evidence raised the lesser offense of assault, rather than also considering whether the evidence provided a "valid, rational alternative" to the greater offense of aggravated assault.  We granted review solely on this issue.[6]

---

[3] *Id.* at 818.

[4] *Id.*

[5] *Id.*

[6] The State raised two issues on discretionary review

1.    Whether conclusory lay testimony can contradict undisputed testimony from medical sources and a victim on the issue of serious bodily injury such that a lesser-included offense is a "valid, rational alternative" to the charged offense.

2.    Whether there is a need to review a defendant's entitlement to a lesser-included instruction when the jury not only convicted on the charged offense but also answered a deadly weapon special issue in the affirmative.

We granted review on the first issue, but not the second.

## Standard of Review

To determine whether a defendant is entitled to an instruction on a lesser-included offense, we apply a two-pronged test.[7]  First, a reviewing court must determine as a matter of law whether the lesser-included offense is truly a lesser-included offense.[8]  Second, there must be some evidence in the record establishing that, if the defendant is guilty, he is guilty of only the lesser offense.[9]  In other words, the evidence must establish that the lesser-included offense provides the jury with "a valid, rational alternative to the charged offense."[10]

The burden of producing evidence to satisfy the second prong is relatively low.[11]  Regardless of the strength or weakness of the evidence, if more than a scintilla of evidence, from any source, raises the issue that the defendant was guilty only of the lesser offense, then the defendant is entitled to an instruction on the lesser offense.[12]  We

---

[7] *Hall v. State*, 225 S.W.3d 524, 535 (Tex. Crim. App. 2007).

[8] *Id.*

[9] *Id.* at 536.

[10] *Id*.

[11] *See Sweed v. State*, 351 S.W.3d 63, 68 (Tex. Crim. App. 2011).

[12] *Saunders v. State*, 840 S.W.2d 390, 391 (Tex. Crim. App. 1992); *Bignall v. State,* 887 S.W.2d 21, 23 (Tex. Crim. App. 1994); *but see Cavazos v. State*, 382 S.W.3d 377, 385 (Tex. Crim. App. 2012) ("While it is true that the evidence may be weak or contradicted, the evidence must still be directly germane to the lesser-included offense and must rise to a

consider all the evidence admitted at trial, not just the evidence presented by the defendant.[13] But, as this Court has previously recognized, a defendant's testimony alone may be sufficient to raise the issue.[14] When determining whether a defendant is entitled to an instruction on a lesser-included offense, we view the facts in the light most favorable toward submitting the instruction, not in a light most favorable to the verdict.[15] In making this determination, we evaluate the evidence in the context of the entire record, but do not consider whether the evidence is credible, controverted, or in conflict with other evidence.[16]

## Analysis

As to the first prong of the test for determining whether Appellant was entitled to an instruction on a lesser-included offense, no one in this case disputes that misdemeanor assault is a lesser-included offense of

---

level that a rational jury could find that if Appellant is guilty, he is guilty only of the lesser-included offense. Meeting this threshold requires more than mere speculation—it requires affirmative evidence that both raises the lesser-included offense and rebuts or negates an element of the greater offense.").

[13] *Ritcherson v. State*, 568 S.W.3d 667, 671 (Tex. Crim. App. 2018).

[14] *Bell v. State*, 693 S.W.2d 434, 442 (Tex. Crim. App. 1985).

[15] *See Thomas v. State*, 699 S.W.2d 845, 859 (Tex. Crim. App. 1985).

[16] *Hall v. State*, 158 S.W.3d 470, 473 (Tex. Crim. App 2005).

aggravated assault.[17]  As for the second prong, the court of appeals correctly held that Appellant's testimony provided more than a scintilla of evidence that raised the lesser offense of assault by causing bodily injury.  However, as the State notes, this conclusion does not end our analysis.  Anything more than a scintilla of evidence can raise a lesser-included offense, but to entitle a defendant to a jury instruction, there must be a scintilla of evidence that the lesser-included offense provides a valid, rational alternative to the greater offense.[18]

## Valid, Rational Alternative

Article 37.08 of the Code of Criminal Procedure provides that "in a prosecution for an offense with lesser included offenses, the jury may find the defendant not guilty of the greater offense, but guilty of any lesser included offense."[19]  Article 37.09 defines a lesser-included offense as an offense established by proof of the same or less than all the facts required to establish the commission of the charged offense.[20]

---

[17] As a matter of law, assault is a lesser-included offense of the charged offense of aggravated assault because "it differs from the charged offense only in the respect that a less serious injury . . . suffices to establish its commission." *See* TEX. CODE CRIM. PROC. art. 37.09; *see also* TEX. PENAL CODE §§ 22.01(a)(1) (stating that assault occurs when person "intentionally, knowingly, or recklessly causes bodily injury"), .02(a)(1) (providing that assault is aggravated assault if person "causes serious bodily injury to another").

[18] *Hall*, 225 S.W.3d at 536.

[19] TEX. CODE CRIM. PROC. art. 37.08.

[20] TEX. CODE CRIM. PROC. art. 37.09.

The statute also allows that a lesser-included offense is an offense that differs from the offense charged only in the respect that a less serious injury or risk of injury to the same person, property, or public interest suffices to establish its commission.[21]  Nothing in the statute requires a lesser-included offense to be a "valid, rational alternative" to the greater offense.[22]

Nevertheless, the State argues that this Court requires that facts raising a lesser-included offense be a "valid, rational alternative" to a greater offense before a defendant is entitled to a jury instruction on that lesser-included offense.  This "valid, rational alternative" test is a court-made doctrine we adopted to bring our jurisprudence in line with the federal standard for determining whether a defendant is entitled to a jury instruction on a lesser-included offense.[23]  The test determines whether there is evidence at trial that casts reasonable doubt upon the greater offense, not whether the evidence is legally insufficient to

---

[21] *Id.*

[22] *Grey v. State*, 298 S.W.3d 644, 648-49 (Tex. Crim. App. 2009) (noting that there is no statutory basis for the "guilty only" requirement for determining when a lesser-included offense should be submitted).

[23] *Arevalo v. State*, 943 S.W.2d 887, 889 (Tex. Crim. App. 1997), *overruled on other grounds by Grey v. State*, 298 S.W.3d 644 (Tex. Crim. App. 2009) (holding that "the State is not bound by the second prong of the *Royster–Rousseau* test.").

establish it.[24]  This second prong of the test is distinct from the jury's ultimate determination as to whether the defendant is guilty only of the lesser offense and not the greater offense.[25]

Most importantly, when determining whether there is some evidence in the record that constitutes a "valid, rational alternative" to a greater offense, we view the evidence in the record in a light most favorable to giving the instruction, not in a light most favorable to the verdict.[26]  The "valid, rational alternative" test merely enhances the second prong of the test for determining whether a defendant is entitled to an instruction on a lesser-included offense.  It is not an invitation for reviewing courts to weigh the strength or credibility of the evidence in the record.[27]

---

[24] *Cavazos v. State*, 382 S.W.3d 377, 385 (Tex. Crim. App. 2012) ("If the evidence raised at trial casts doubt on the greater offense, a lesser-included offense instruction allows the jury to vote for a rational alternative.").

[25] *Rousseau v. State*, 855 S.W.2d 666, 672 (Tex. Crim. App. 1993), *see also Bell*, 693 S.W.2d at 442 ("[I]t is . . . well recognized that a defendant is entitled to an instruction on every issue raised by the evidence, whether produced by the State or the defendant and whether it be strong, weak, unimpeached, or contradicted.  (Citations omitted.)  It is then the jury's duty, under the proper instructions, to determine whether the evidence is credible and supports the lesser included offense.").

[26] *Bufkin v. State*, 207 S.W.3d 779, 782 (Tex. Crim. App. 2006) (noting that courts reviewing the denial of a requested instruction view the evidence in the light most favorable to the defendant's requested instruction); *see also Goad v. State*, 354 S.W.3d 443, 450 (Tex. Crim. App. 2011) (Keller, P.J., concurring) ("[T]he question to be answered is whether the necessary inferences are reasonable based upon the combined and cumulative force of all the evidence when viewed in the light most favorable to the submission of the lesser offense[.]") (internal quotation marks omitted).

[27] *Goad*, 354 S.W.3d at 446–47.

In considering whether evidence of a lesser-included offense establishes a valid, rational alternative to the charged offense in this case, we compare the statutory elements of the greater offense of aggravated assault and the lesser offense of assault to determine whether some evidence exists in the record that could cast reasonable doubt upon a conviction for the greater offense of aggravated assault as charged in the indictment but not the lesser offense of assault.[28] Under the Texas Penal Code, a person commits assault if he intentionally, knowingly, or recklessly causes bodily injury to another.[29] A person commits aggravated assault if he commits assault and either: (1) causes serious bodily injury to another, or (2) uses or exhibits a deadly weapon during the commission of the assault.[30]  In this case we are only concerned with the evidence concerning the degree of the injury caused not whether a deadly weapon was used during the assault given the ground for discretionary review before us.[31]

---

[28] *See Sweed*, 351 S.W.3d at 68; *Bullock v. State*, 509 S.W.3d 921, 925 (Tex. Crim. App. 2016).

[29] TEX. PEN. CODE § 22.01(a)(1).

[30] TEX. PEN. CODE § 22.02; *Ferrel v. State*, 55 S.W.3d 586 (Tex. Crim. App. 2001).

[31] As mentioned above, this Court granted review solely on the issue of whether there was some evidence that could have rationally negated the element of serious bodily injury.  The State's second ground for review asked us to consider the harm associated with any error in failing to instruct the jury on the lesser-included offense in light of the jury's affirmative answer to the deadly weapon issue.  The court of appeals rejected the State's argument on

## Serious Bodily Injury

There are no wounds that constitute "serious bodily injury" *per se*.[32] We have long held that it is up to a jury to determine as a matter of fact whether a particular bodily injury can be said to be "serious."[33] Whether an injury constitutes serious bodily injury is determined on a case-by-case basis.[34] Therefore, there must have been some evidence that would have permitted the jury to rationally doubt that the injury to Sughrue's earlobe constituted serious bodily injury for Appellant to be entitled to the requested instruction on the lesser-included offense.[35]

---

this issue. *Wade*, 594 S.W.3d at 817. We refused discretionary review of that aspect of the court of appeals' holding.

[32] *See, e.g.*, *Williams v. State,* 696 S.W.2d 896, 898 (Tex. Crim. App. 1985) (stating that a knife or gunshot wound, although caused by a deadly weapon, is not, per se, serious bodily injury); *Sizemore v. State*, 387 S.W.3d 824, 828 (Tex. App.—Amarillo 2012, pet. ref'd); *Miller v. State*, 312 S.W.3d 209, 213 (Tex. App.—Houston [14th Dist.] 2010, pet ref'd) (summarizing Texas cases in which courts have reached varying conclusions as to whether similar injuries constituted serious bodily injury).

[33] *Davis v. State*, 199 S.W.2d 167, 168 (Tex. Crim. App. 1947); *Faulkner v. State*, 137 S.W.2d 1039, 1041 (Tex. Crim. App. 1940); *Svidlow v. State*, 236 S.W. 101, 102 (Tex. Crim. App. 1921).

[34] *Moore v. State*, 739 S.W.2d 347, 349 (Tex. Crim. App. 1987), *abrogated on other grounds by Blea v. State*, 483 S.W.3d 29, 34 (Tex. Crim. App. 2016) (disavowing the portion of *Moore* that considered whether a victim had a substantial risk of death after taking into consideration the effects of medical treatment on the injury).

[35] *See Forest v. State*, 989 S.W.2d 365, 367 (Tex. Crim. App. 1999) ("When the evidence raising the lesser-included offense also casts doubt upon the greater offense, it provides the fact finder with a rational alternative by voting for the lesser-included offense.") (citing *Arevalo v. State*, 943 S.W.2d 887, 889 (Tex. Crim. App. 1997)).

Here, the State charged Appellant with aggravated assault by causing serious bodily injury. Aggravated assault increases the penalty for simple "bodily injury" assault if the victim suffers a significantly greater degree of bodily harm—serious bodily injury, rather than mere bodily injury.[36] "Serious bodily injury" means bodily injury "that creates a substantial risk of death or that causes death, serious permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ."[37]

By way of contrast, "bodily injury" means "physical pain, illness, or any impairment of physical condition."[38] The Legislature intended that there be a meaningful difference or distinction between "bodily injury" and "serious bodily injury," and that difference is often a matter of degree.[39] At trial, the State sought to prove serious bodily injury by showing that Sughrue had suffered serious permanent disfigurement as a result of the assault. Therefore, there must have been some evidence that would have permitted the jury to rationally believe that the amputation of Sughrue's earlobe did not constitute serious permanent

---

[36] *Landrian v. State*, 268 S.W.3d 532, 538 (Tex. Crim. App. 2008).

[37] TEX. PEN. CODE § 1.07(46).

[38] TEX. PEN. CODE § 1.07(8).

[39] *Moore*, 739 S.W.2d at 349.

disfigurement in order to support the requested instruction on the lesser-included offense.

## Serious Permanent Disfigurement

As mentioned above, distinguishing between "bodily injury" and "serious bodily injury" is a matter of degree.[40]  The relevant issue in determining the degree of disfigurement is the damage caused by the wound when inflicted, not the disfigurement as exacerbated or ameliorated by medical treatment.[41]  However, bodily injury cannot be elevated to serious bodily injury by postulating potential complications that are not in evidence.[42]  There must be evidence of some significant cosmetic deformity caused by the injury.[43]  Ultimately, as intermediate courts have observed, a jury is free to apply common sense, knowledge, and experience gained in the ordinary affairs of life in drawing reasonable inferences from the evidence presented to it in order to

---

[40] *Id.*

[41] *Blea*, 483 S.W.3d at 34–35.

[42] *Hernandez*, 946 S.W.2d at 112.

[43] *See, e.g.*, *Brown v. State*, 605 S.W.2d 572, 575 (Tex. Crim. App. 1980) (testimony that broken nose would cause disfigurement and dysfunction if untreated sufficient to show serious permanent disfigurement) *abrogated on other grounds by Hedicke v. State*, 779 S.W.2d 837 (Tex. Crim. App. 1989).

conclude that a particular injury constitutes "serious bodily injury."[44] But it is also up to the jury to resolve conflicting inferences.[45]

Indeed, courts have also noted that not every scar amounts to serious permanent disfigurement.  For example, in *Williams v. State*, we recognized that a knife wound, or a gunshot wound, although caused by a deadly weapon such as a knife or a gun, is not, *per se*, serious bodily injury.[46]  In *Williams*, the complaining witness failed to testify to the extent of his injuries even though it was uncontested that he had been shot, and we held the evidence insufficient to establish "serious bodily injury."[47]  Similarly, in *Hernandez v. State*, the El Paso Court of Appeals held that a one-inch scar in the victim's abdomen did not establish "serious permanent disfigurement" even though the stab wound that caused it resulted in a laceration to the victim's liver.[48]  And in *McCoy v. State*, the Fort Worth Court of Appeals held that a slight scar on the lip of a police officer was not sufficient to establish serious permanent

---

[44] *Eustis v. State*, 191 S.W.3d 879, 884 (Tex. App.—Houston [14th Dist.] 2006, pet. ref'd.).

[45] *See, e.g.*, *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007) (noting the jury's duty to resolve conflicts in the testimony, to weigh evidence, and to draw reasonable inferences from basic facts to ultimate facts as well as the requirement that reviewing courts defer to the jury's resolution of conflicting inferences).

[46] *Williams,* 696 S.W.2d at 898.

[47] *Id.*

[48] *Hernandez v. State*, 946 S.W.2d 108, 113 (Tex. App.—El Paso 1997, no pet.).

disfigurement.[49]  While these cases involve the more demanding inquiry of legal sufficiency, they also demonstrate that jurors can rationally draw conclusions that some scars and injuries are not "serious" enough to rise to the level of serious bodily injury even though the scars unquestionably amount to "permanent disfigurement."

Moreover, "serious bodily injury" may be established without a physician's testimony when the injury and its effects are obvious.  We have previously held that a lay witness's opinion testimony supported a finding of serious bodily injury, which suggests that lay opinion testimony can also be used to negate that element.[50]   For example, in *Hart v. State*, the defendant challenged the sufficiency of the evidence to support his conviction for aggravated assault by arguing that the State failed to prove serious bodily injury.[51]   The evidence at trial included the victim's testimony that the defendant had attacked her with a knife and stabbed her in both the stomach and shoulder, as well as medical records corroborating her description of the injuries.[52]  We held

---

[49] *McCoy v. State*, 932 S.W.2d 720, 724 (Tex. App.—Fort Worth 1996, pet. ref'd.).

[50] *See, e.g.*, *Hart v. State*, 581 S.W.2d 675, 677 (Tex. Crim. App. 1979) (citing *Denham v. State*, 574 S.W.2d 129 (Tex. Crim. App. 1978)).

[51] *Hart*, 581 S.W.2d at 676.

[52] *Id.* at 676, 677.

that the evidence was sufficient, reasoning that the victim had testified that the two wounds were serious "and a person who has received injuries is qualified to express an opinion on the seriousness of those injuries."[53]

If lay witness testimony can rationally provide some evidence from which a jury can infer the severity of a particular injury, then the converse is equally true, at least under the facts presented in this case. In this regard, we agree with the court of appeals. Just as the State could rely in this case on Sughrue's lay opinion testimony to establish permanent disfigurement, Appellant could rely on lay opinion testimony to cast doubt upon whether that disfigurement was serious. As we observed in *Ritcherson v. State*, the valid, rational alternative test can be satisfied if there is evidence that is susceptible to different

---

[53] *Id.* at 677; *see also Rawlinson v. State*, 303 S.W.2d 796, 797 (Tex. Crim. App. 1957) ("A fundamental rule is that the injured party may describe the injuries which he received if he is able to describe them in simple and non-expert language."); *see, e.g.*, *Jackson v. State*, 399 S.W.3d 285, 292 (Tex. App.—Waco 2013, no pet.) (after specifically noting that 'serious bodily injury' may be established without a physician's testimony "if the injury and its effects are obvious," holding that evidence was sufficient to show 'serious bodily injury' where multiple witnesses described the injuries and opined that "the injuries sustained by the child in this case were severe enough to constitute 'serious bodily injury.'"); *Coshatt v. State*, 744 S.W.2d 633, 636 (Tex. App.—Dallas 1987 pet ref'd.) ("[T]he appellant's wife's testimony that she lost the partial use of her back as a result of the injuries inflicted by the appellant is sufficient evidence to establish the impairment of the function of a body member."); *Botello v. State*, 693 S.W.2d 528 (Tex. App.—Corpus Christi 1985, pet ref'd.) (victim's testimony of partial loss of use of hand due to assault sufficient to establish impairment).

interpretations, one of which refutes or negates an element of the greater offense.[54]

Moreover, Appellant's lay opinion testimony was appropriate under the facts of this case. Generally, a lay witness's observations which do not require significant expertise to interpret, and which are not based on a scientific theory, are admissible if they satisfy the requirements of Texas Rule of Evidence 701.[55] Because the nature of the injury does not require significant expertise to understand and the requirements of Rule 701 were met, Appellant's testimony could provide a valid, rational alternative to the greater offense of aggravated assault.

First, the State's treatment of the nature of the injury at issue demonstrates that the injury did not require significant expertise to evaluate. Even events not normally encountered by most people in everyday life—such as someone biting off another person's earlobe—do not necessarily require the testimony of an expert.[56] "It is only when

---

[54] *Ritcherson*, 568 S.W.3d at 671.

[55] *See Osbourn v. State*, 92 S.W.3d 531, 537 (Tex. Crim. App. 2002) (In determining whether an officer's lay opinion regarding identification of marihuana satisfied Texas Rule of Evidence 701, noting, "as a general rule, observations which do not require significant expertise to interpret and which are not based on a scientific theory can be admitted as lay opinions if the requirement of Rule 701 are met.").

[56] *See id.* ("Additionally, even events not normally encountered by most people in everyday life do not necessarily require the testimony of an expert."); *see, e.g.*, *Hart*, 581 S.W.2d at 677 ("Complainant testified that these two wounds were serious and a person who has received injuries is qualified to express an opinion on the seriousness of those injuries.");

the fact-finder may not fully understand the evidence or be able to determine the fact in issue without the assistance of someone with specialized knowledge that a witness must be qualified as an expert."[57]

In this case, the jury would have been able to understand the nature and the seriousness of Sughrue's disfigurement without the assistance of expert testimony. In fact, the jurors had the opportunity to observe Sughrue's injury with their own eyes, both through photographs showing the injury at the time it was inflicted and through Sughrue exhibiting the healed injury during his testimony. Though the court of appeals correctly held that a jury could have rationally found that Sughrue's injury amounted to serious permanent disfigurement when viewing the bloody crime scene photographs, the jury could have also rationally found that Sughrue's injury was, as Appellant testified, not serious, when it viewed, for example, this photograph of Appellant's injured ear:

---

*Denham*, 574 S.W.2d at 131 ("Surely one who observes and receives a wound from a butcher knife is capable of testifying that the knife is a deadly weapon capable of causing death or serious bodily injury. We decline to hold that further testimony is needed to justify the jury in finding such knife to be a deadly weapon. This is common knowledge that any lay witness is competent to testify to.").

[57] *Osbourn*, 92 S.W.3d at 537.



Accordingly, a lay witness could properly testify in the form of an opinion about whether the amputation of Sughrue's left earlobe constituted serious permanent disfigurement.

Second, Appellant's testimony was proper under Rule 701.[58] Under Rule 701 of the Texas Rules of Evidence, a lay witness can testify in the form of an opinion if the opinion is (a) rationally based on the witness's perceptions, and (b) helpful to the clear understanding of the testimony or the determination of a fact in issue.[59] Perceptions refer to a witness's interpretation of information acquired through his or her own

---

[58] *See Ex parte White*, 160 S.W.3d 46, 53 (Tex. Crim. App. 2004) ("The testimony that the applicant intentionally ran over the victim with his truck was admissible under Texas Rule of Evidence 701 because the lay witness's opinion was rationally based on his own perception and was helpful in the determination of a fact in issue."). Notably, the State elicited the lay opinion at issue during its cross-examination of Appellant. The State did not object that Appellant's testimony failed to satisfy the requirements of Rule 701.

[59] Tex. R. Evid. 701; *Fairow v. State*, 943 S.W.2d 895, 898 (Tex. Crim. App. 1997).

senses or experiences at the time of the event.[60]  Thus, the witness's testimony can include opinions, beliefs, or inferences as long as they are drawn from his or her own experiences or observations.[61]  An opinion is rationally based on perception if it is one that a reasonable person could draw under the circumstances.[62]  There is no bright line rule indicating when an opinion is helpful, but we have said that general evidentiary concerns, such as relevance and the Rule 403's balancing test, aid the determination.[63]

Appellant's opinion was rationally based on his observations of the injury, both as it was inflicted and as the healed injury appeared at the time of trial.[64]  Appellant conceded he bit Sughrue's earlobe and caused the injury, which would have given Appellant the opportunity to personally observe the injury as it was inflicted.  And, like the jury,

---

[60] *Osbourn*, 92 S.W.3d at 535.

[61] *Id.*

[62] *Fairow*, 943 S.W.2d at 900.

[63] *Id.*

[64] *See Brown*, 605 S.W.2d at 575 (holding that a broken nose qualified as serious bodily injury notwithstanding medical care that set the bone and prevented disfigurement because "[t]he relevant issue was the disfiguring and impairing quality of the bodily injury as it was inflicted, not after the effects had been ameliorated or exacerbated by other actions such as medical treatment."). *See, e.g.*, *Coshatt*, 744 S.W.2d at 636 ("[T]he appellant's wife's testimony that she lost the partial use of her back as a result of the injuries inflicted by the appellant is sufficient evidence to establish the impairment of the function of a body member."); *Botello*, 693 S.W.2d at 528 (victim's testimony of partial loss of use of hand due to assault sufficient to establish impairment).

Appellant was able to observe Sughrue's healed injury during Sughrue's testimony at trial. Under these circumstances, a reasonable person could form an opinion on whether the injury amounted to "serious permanent disfigurement" given the obvious nature of the injury.

Appellant's opinion could also have been helpful to the jury's determination of a fact in issue, namely whether Appellant seriously disfigured Sughrue, given that it was the only evidence expressly addressing the issue.[65] The medical records introduced by the State describe the injury and the treatment, but they do not contain any medical opinion or prognosis that the disfigurement was permanent or severe. The State offered no other medical or expert testimony to establish that Sughrue had suffered a serious permanent disfigurement. And, while Sughrue testified that he considered himself to be permanently disfigured, he did not express an opinion on whether his disfigurement was serious. Accordingly, the jurors were left to determine, based on their evaluation of the nature of the injury and their common sense, knowledge, and experience, whether the loss of

---

[65] *See, e.g.*, *Jackson*, 399 S.W.3d at 292 (after specifically noting that 'serious bodily injury' may be established without a physician's testimony "if the injury and its effects are obvious," holding that evidence was sufficient to show 'serious bodily injury' where multiple witnesses described the injuries and opined that "the injuries sustained by the child in this case were severe enough to constitute 'serious bodily injury.'").

Sughrue's earlobe resulted in serious permanent disfigurement. Given that context, Appellant's own opinion, regardless of whether it was persuasive, was at least some evidence that was directly germane to the lesser-included offense and could have rationally cast doubt upon evidence that the injury at issue amounted to serious bodily injury.[66]

Because a lay witness could properly testify on the issue of serious bodily injury under these facts, Appellant's testimony was at least some evidence that could have provided the jury with a valid, rational alternative to the greater offense of aggravated assault.[67] During his testimony, Appellant admitted that he bit Sughrue's earlobe hard enough to sever it from the rest of the ear and conceded that Sughrue's ear was disfigured as a result of the bite. However, Appellant disputed that this disfigurement was serious at the time it was inflicted and after it had healed. He also testified that he would not notice the injury if he did not know the victim and saw him walking down the street. Because the only distinguishing feature between assault and aggravated assault

---

[66] *See Cavazos*, 382 S.W.3d at 385 ("While it is true that the evidence may be weak or contradicted, the evidence must still be directly germane to the lesser-included offense and must rise to a level that a rational jury could find that if Appellant is guilty, he is guilty only of the lesser-included offense. Meeting this threshold requires more than mere speculation—it requires affirmative evidence that both raises the lesser-included offense and rebuts or negates an element of the greater offense.").

[67] *See Bell*, 693 S.W.2d at 442.

as charged in the indictment is the seriousness of the injury,[68] Appellant's testimony, if credited by the jury, could have provided some evidence from which a jury could have rationally doubted an element of the greater offense—serious bodily injury—and raised the lesser-included offense of assault by conceding his actions caused bodily injury.[69]

Moreover, Appellant's opinion fit within the context of the record developed as part of his defense.[70] Even though there was "quite a bit of blood" at the scene of the offense, Sughrue's ear had almost stopped bleeding on its own by the time EMS arrived. Sughrue was able to stand and walk to the ambulance for further treatment, after which EMS transported Sughrue to the hospital without lights and sirens. This was because the injury was not life-threatening. Further, Sughrue was able to return to work the day after the assault, and he continued to work

---

[68] *See* TEX. PENAL CODE §§ 22.01(a)(1) (stating that assault occurs when person "intentionally, knowingly, or recklessly causes bodily injury"), .02(a)(1) (providing that assault is aggravated assault if person "causes serious bodily injury to another").

[69] *See Forest*, 989 S.W.2d at 367 ("When the evidence raising the lesser-included offense also casts doubt upon the greater offense, it provides the fact finder with a rational alternative by voting for the lesser-included offense.") (citing *Arevalo*, 943 S.W.2d at 889).

[70] *See Ramos v. State*, 865 S.W.2d 463, 465 (Tex. Crim. App. 1993) (noting that review of isolated statement must be viewed in light of the entire record of the factual theory of the defendant's case); *see also Enriquez v. State*, 21 S.W.3d 277, 278 (Tex. Crim. App. 2000)(relying upon *Ramos v. State*, 865 S.W.2d 463, 465 (Tex. Crim. App. 1993) for the holding that appellate courts must examine the entire record "instead of plucking certain evidence from the record and examining it in a vacuum.").

each day following the assault. The hospital records indicated that Sughrue was in stable condition after the assault and doctors discharged him from the hospital the same day. And while Sughrue received several stitches to close the wound on his ear, the only follow-up medical care indicated was for the removal of the stitches. Sughrue also refused pain medications.

Sughrue's testimony also demonstrated that he was able to hear and respond to the questions asked by counsel without difficulty, which suggests that there was no loss or impairment of the function of the injured ear.[71] Finally, the evidence showed that Sughrue was able to walk to the ambulance on his own, doctors determined him to be stable at the hospital and discharged him the same day, and Sughrue was able to return to work the next day, all of which support Appellant's opinion that the injury was not serious.

Essentially, the State argues that the court of appeals plucked Appellant's testimony out of the record and examined it in a vacuum. As discussed above, this is inaccurate. Appellant proceeded under two defensive theories at trial: self-defense and lack of serious bodily injury.

---

[71] *See id.* (defining serious bodily injury in part as bodily injury "that causes . . . protracted loss or impairment of the *function* of any bodily member or organ.") (emphasis added).

Though Appellant focused primarily focused on self-defense, he marshaled testimony through cross-examination that undermined the conclusion that the injury in this case rose to the level of serious bodily injury. This culminated in Appellant's testimony, elicited by the State, that the victim had not suffered serious bodily injury. Appellant's opinion testimony in this regard was also the only direct evidence germane to the issue of the seriousness of the injury. Further, it was bolstered by several other pieces of evidence in the record undermining the seriousness of the victim's injury.

It is the jury's role—not ours—to determine whether to believe the evidence negating the greater offense and supporting the lesser.[72] We have made clear that, in determining whether a defendant is entitled to an instruction on a lesser-included offense, the issue is not whether a rational jury could have found the defendant guilty of the greater offense, but rather, whether a jury could have reasonably interpreted the record in such a way that it could find the defendant guilty only of the lesser-included offense.[73] Based on the totality of the record in this case, we conclude that there was at least some evidence from which a

---

[72] *See Sweed*, 351 S.W.3d at 69.

[73] *Ritcherson*, 568 S.W.3d at 671.

jury could have rationally done so regardless of how persuasive that evidence is. Accordingly, we agree with the court of appeals that the trial court should have granted Appellant's request and instructed the jury on the lesser-included offense of assault. It would then have been the jury's duty under the proper instructions to determine whether the testimony was persuasive, credible, and supported the lesser-included offense.[74]

## Conclusion

Viewing the evidence in the light most favorable to the requested charge, Appellant's lay opinion testimony negating the seriousness of the injury, combined with other evidence supporting his defensive theory, amounted to more than a scintilla of evidence that could have provided the jury with a valid, rational alternative to the greater offense of aggravated assault. Therefore, the trial court erred in denying Appellant's requested instruction on the lesser-included offense. We affirm the judgment of the court of appeals.

Filed: April 6, 2022

Publish

---

[74] *See Moore v. State*, 574 S.W.2d 122, 124 (Tex. Crim. App. 1978).